## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-1376

WENDY FAUSTIN,

     *Plaintiff*,

v.

JARED POLIS, in his official capacity as Governor of Colorado;
PHILIP J. WEISER, in his official capacity as Colorado Attorney General;
JOHN KELLNER, in his official capacity as District Attorney for the 18th Judicial District;
SAM WATSON, in his official capacity as Chief of the Englewood Police Department;
CITY AND COUNTY OF DENVER;
BETH MCCANN, in her official capacity as District Attorney for the 2nd Judicial District;
KERRY C. TIPPER, in her official capacity as City Attorney of Denver; *and*
RON THOMAS, in his official capacity as Chief of the Denver Police Department,

     *Defendants*.

---

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF AND NOMINAL DAMAGES

---

Plaintiff Wendy Faustin, by and through the undersigned attorneys, files this Complaint against the above-captioned Defendants, in their official capacities as state and local officials responsible under Colorado law for administering and enforcing state and local restrictions on engaging in speech outside of abortion clinics. Plaintiff seeks declaratory and injunctive relief: a declaration that these restrictions are unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and an injunction compelling Defendants to refrain from enforcing them. Plaintiff also seeks nominal damages from the City and County of Denver to compensate her for Denver's violation of her constitutional rights. In support of her Complaint against Defendants, Plaintiff hereby alleges as follows:

1

## INTRODUCTION

1.      The First Amendment's Free Speech Clause guarantees the fundamental right of "those who share an abiding moral or religious conviction (or, for that matter, simply a biological appreciation) that abortion is the taking of a human life" to try "to persuade women, one by one, not to make that choice" in "the most effective place, if not the only place, where that persuasion can occur"—"outside the entrances to abortion facilities." *Hill v. Colorado*, 530 U.S. 703, 763 (2000) (Scalia, J., dissenting). Indeed, this "freedom to speak and persuade is inseparable from, and antecedent to, the survival of self-government." *Id.* at 763–64.

2.      Plaintiff Wendy Faustin believes that abortion is a horrific moral wrong that not only takes the life of an unborn human person but also causes lasting damage to each mother who undergoes one. She wishes to personally and compassionately talk to women seeking abortions, and give them further information related to the procedure and other available options, in an attempt to convince them to pursue an alternative to abortion—a form of speech commonly known as "sidewalk counseling." She wishes to try to persuade these women in the only place and at the only time she realistically can: outside of the abortion clinic, in the last few minutes before they obtain the abortion.

3.      Defendants, state and local officials in the State of Colorado, the City of Englewood, and the City and County of Denver, have acted to "make . . . that task an impossible one." *Id.* at 763. In substantively identical provisions, Colorado and Denver ban anyone from "knowingly approach[ing] another person within eight feet" in the sidewalks and streets outside the entrance to abortion clinics "for the purpose of passing a leaflet or handbill to . . . , or engaging in oral protest, education, or counseling with such other person." COLO. REV. STAT. § 18-9-122(3); *accord* DENVER CODE OF ORDINANCES § 38-114(b). That ban effectively eliminates Plaintiff

Faustin's "ability to initiate the close, personal conversations that [she] view[s] as essential to 'sidewalk counseling.'" *McCullen v. Coakley*, 573 U.S. 464, 487 (2014). It thus "impose[s] serious burdens on [Plaintiff's] speech." *Id.*

4.      Defendants' ban on approaching women outside of abortion clinics to speak with them unquestionably discriminates based on the content—and even the viewpoint—of speech. On its face, the ban applies only to speech with a particular purpose and message: speech "for the purpose . . . of engaging in oral protest, education, or counseling." COLO. REV. STAT. § 18-9-122(3). And it targets only that speech on *one side* of the abortion debate: speech "protest[ing] or counsel[ing] *against*" what Colorado euphemistically terms "certain medical procedures." *Id.* § 18-9-122(1) (emphasis added). Moreover, as the Supreme Court's majority opinion in *Hill* makes clear, Defendants' ban is also content- and viewpoint-based due to the nature of its justification: protecting the "unwilling listener's interest in avoiding unwanted communication" from pro-life speakers when seeking "access to a medical facility." *Hill*, 530 U.S. at 716, 717. That effort to limit "the direct impact of speech on its audience" is "not . . . a content-neutral justification." *McCullen*, 573 U.S. at 481.

5.      Indeed, the interest in limiting speech because it "cause[s] offense or ma[kes] listeners uncomfortable," *id.*—which *Hill* established as the *core justification* of Colorado's ban, *see* 530 U.S. at 715–18—is not even a *legitimate* one, let alone sufficiently compelling to justify a content-based restriction on speech. "Suffice it to say that if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." *Id.* at 748–49 (Scalia, J., dissenting). Nor are Defendants' restrictions on speech narrowly tailored to advance any other compelling interest. They are thus inconsistent with the First Amendment and must be struck down.

6.     Plaintiff acknowledges that the result she seeks is contrary to currently governing precedent as set forth by the majority opinion in *Hill*. But for the reasons explained by the dissents in that case and in later Supreme Court precedent, that case was wrongly decided, is irreconcilable with intervening precedent, and has severely "distorted First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022); *see Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *McCullen v. Coakley*, 573 U.S. 464 (2014). She therefore institutes this litigation to vindicate her First Amendment rights and to seek to have *Hill* overruled.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over Plaintiff's claim under 28 U.S.C. §§ 1331 and 1343.

8.     Plaintiff seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

## PARTIES

10.     Plaintiff Wendy Faustin is a citizen of the United States and a resident of the State of Colorado. She resides in Denver, CO.

11.     Defendant Jared Polis is the Governor of Colorado. As Colorado's chief executive official, Polis is responsible for overseeing the enforcement and administration of the State's criminal laws, including COLO. REV. STAT. § 18-9-122. His official address is State Capitol Building, 200 E. Colfax Ave., Rm. 136, Denver, CO 80203. He is being sued in his official capacity.

12.     Defendant Philip J. Weiser is the Attorney General of Colorado. As Attorney General, he serves as the chief legal representative of the State and has authority to prosecute and

defend all actions and proceedings in which the State is a party. His official address is Office of the Attorney General, Colorado Department of Law, Ralph L. Carr Judicial Building, 1300 Broadway, 10th Floor, Denver, CO 80203. He is being sued in his official capacity.

13.     John Kellner is the District Attorney for the 18th Judicial District, which encompasses the City of Englewood. As District Attorney, he has authority to appear on behalf of the State and prosecute all actions pending within the City of Englewood, including actions under COLO. REV. STAT. § 18-9-122. His official address is 6450 S. Revere Parkway, Centennial, CO 80111. He is being sued in his official capacity.

14.     Defendant Sam Watson is the Chief of the Englewood Police Department. As Chief of Police, he is responsible for supervising the enforcement of all criminal prohibitions and restrictions within the City of Englewood, including COLO. REV. STAT. § 18-9-122. His official address is 3615 S. Elati St., Englewood, CO 80110. He is being sued in his official capacity.

15.     The City and County of Denver is a duly chartered municipal corporation in the State of Colorado. One of the City and County's ordinances, DENVER CODE OF ORDINANCES § 38-114, is being challenged in this lawsuit. The City and County is represented in civil litigation by its City Attorney's Civil Litigation Section, 201 W. Colfax Ave., Dept. 1108, Denver, CO 80202.

16.     Beth McCann is the District Attorney for the 2nd Judicial District, which encompasses the City and County of Denver. As District Attorney, she has authority to appear on behalf of the State and prosecute all actions pending within the City and County of Denver, including actions under COLO. REV. STAT. § 18-9-122. Her official address is 201 Colfax Avenue, 8th Floor, Denver, CO 80202. She is being sued in her official capacity.

17.     Kerry C. Tipper is the City Attorney of the City and County of Denver. As City Attorney, she serves as the chief legal advisor to the City and County and its officials, represents

the City and County in civil litigation, and has authority to prosecute violations of the City and County's ordinances, including DENVER CODE OF ORDINANCES § 38-114. Her official address is 201 Colfax Avenue, Dept. 1108, Denver, CO 80202. She is being sued in her official capacity.

18.    Ron Thomas is the Chief of the Denver Police Department. As Chief of Police, he is responsible for supervising the enforcement of all criminal prohibitions and restrictions within the City and County of Denver, including COLO. REV. STAT. § 18-9-122 and DENVER CODE OF ORDINANCES § 38-114. His official address is Police Administration Building, 1331 Cherokee Street, Denver, CO 80204. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

### I.    Ms. Faustin's Speech.

19.    Ms. Faustin believes that life begins at conception, that all human life has God-given worth and dignity, and that ending the life of the unborn is morally wrong. She feels compelled by these beliefs to advocate publicly on behalf of the unborn. She has been actively involved in the pro-life movement in various roles since 1981. She is active in supporting crisis pregnancy centers in the Denver area. She has actively supported pro-life candidates for public office.

20.    As part of her efforts on behalf of the pro-life movement, Ms. Faustin was actively engaged in sidewalk counseling before COLO. REV. STAT. § 18-9-122 and DENVER CODE OF ORDINANCES § 38-114 took effect. Ms. Faustin feels she is called by God to defend the unborn in any way that she can and that one of the most effective ways of doing so is by peacefully approaching women entering abortion clinics to try to educate them about the nature of the unborn child developing inside them and inform them about alternatives to abortion.

21.    As discussed at greater length below, COLO. REV. STAT. § 18-9-122 and DENVER CODE OF ORDINANCES § 38-114 severely restrict Ms. Faustin's ability to engage in sidewalk

counseling; but she continues to regularly and actively speak peacefully and compassionately to women entering abortion clinics to the limited extent those laws allow. Typically, Ms. Faustin's speech now involves standing on a sidewalk close enough to the clinic's door to identify women who are entering it (and thus within 100 feet of the entrance); displaying a sign with a pro-life message; and calling out to women to ask them if she can speak with them about, and give them written information concerning, the nature of their unborn children, the procedure, and other available alternatives and resources.

22.     Since the early 1990's, Ms. Faustin has regularly engaged in these forms of speech outside of abortion clinics in the Denver metropolitan area. Specifically, she has engaged in these forms of speech outside of both the clinic Healthy Futures, located at 300 E Hampden Ave 201, Englewood, CO 80113, and Mile High Women's Clinic, located at 4545 E 9th Ave #502, Denver, CO 80220, among others.

23.     Ms. Faustin is also interested in engaging in these forms of speech outside of the clinic Partners In Women's Health, located at 4500 E 9th Ave #700, Denver, CO 80220.

24.     All three of these clinics are located next to public sidewalks that are less than 100 feet from the clinic's entrance.

25.     When Ms. Faustin speaks to women entering a clinic, she is peaceful, gentle and kind. Indeed, she believes that speaking to these women in a loud or confrontational way hampers the effectiveness of her message. She merely wishes to provide the women seeking abortions with more information about the nature of their unborn children, the procedure, and other available alternatives and resources.

26.     Ms. Faustin also seeks to tender leaflets or pamphlets to women entering abortion clinics providing information about the nature of their unborn children, the procedure, and other available alternatives and resources.

27.     Ms. Faustin knows that every day, unborn children are being aborted in the clinics in her area, causing the loss of the child's life and permanent emotional and spiritual damage to their mothers. She feels morally compelled to try to speak peacefully with the women entering these clinics to give a voice to their unborn children.

## II.     Colorado's Restrictions on Speech Outside Abortion Clinics.

28.     The State of Colorado imposes severe, content-based restrictions on the speech that may occur outside of abortion clinics. COLO. REV. STAT. § 18-9-122(3) provides:

> No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility.

29.     Section 18-9-122(4) defines "health-care facility" to mean "any entity that is licensed, certified, or otherwise authorized or permitted by law to administer medical treatment in this state." COLO. REV. STAT. § 18-9-122(4).

30.     "Health-care facilities" include abortion clinics within Colorado.

31.     Section 18-9-122(3)'s restriction on approaching people entering abortion clinics to offer them "a leaflet or handbill" or to "engag[e] in oral protest, education, or counseling," COLO. REV. STAT. § 18-9-122(3), with them thus surgically targets the pro-life practice known as "sidewalk counseling," effectively banning it without first obtaining the person's affirmative consent.

32.     The punishment for each violation of Section 18-9-122(3)'s ban on approaching women outside of abortion clinics to counsel them is a fine of up to $300, jail time up to ten days,

or both. *See* Colo. Rev. Stat. § 18-9-122(3) (classifying violation as a "petty offense"); *id.* § 18-1.3-503(1.5) (establishing penalty).

33.     Violation of Section 18-9-122(3)'s ban also gives rise to civil liability for damages and injunctive relief. *See id.* §§ 18-9-122(6), 13-21-106.7.

34.     Colorado defended the validity of Section 18-9-122(3) all the way to the Supreme Court, resulting in the decision in *Hill* upholding the law. Defendants continue to actively enforce Section 18-9-122(3).

35.     Section 18-9-122(3)'s restriction on oral communications outside health care facilities is content-based on its face. While Section 18-9-122(3) bars oral communications that constitute "protest," "education," or "counseling," it does not bar any other type of oral communication. Colo. Rev. Stat. § 18-9-122(3). Accordingly, the act unambiguously draws distinctions based on the message a speaker conveys, and enforcement authorities seeking to determine whether an individual's speech falls within the Act must examine the content of the message that is conveyed to determine whether a violation has occurred.

36.     Section 18-9-122(3) is also content-based because it defines regulated speech by its function or purpose. The provision only applies to a person who approaches within eight feet of another to speak with them *for a particular purpose*: "for the purpose of . . . engaging in oral protest, education, or counseling with such other person." *Id*. Approaching someone to speak for any other purpose is freely permitted.

37.     Section 18-9-122(3)'s ban is also facially content-based because it applies only to speech outside of "health care facilities." That limitation to "protest, education, or counseling" that occurs only in specific locations is a content-based determination. *Id*.

38.     Section 18-9-122(3)'s ban on approaching women outside of abortion clinics to counsel them is content-based not only on its face but also because it cannot be justified without reference to the content of the regulated speech.

39.     As the Supreme Court has held, Section 18-9-122(3)'s purpose is to "protect listeners from unwanted communication." *Hill*, 530 U.S. at 716. And as the Court has also more recently made clear, when the government acts to limit the "undesirable effects that arise from the direct impact of speech on its audience" by, for example, restricting speech because it "cause[s] offense or ma[kes] listeners uncomfortable," that is "not . . . a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481 (internal quotation marks omitted).

40.     In addition to being content-based, Section 18-9-122(3) is also viewpoint-based.

41.     That, too, is evident from the face of the law. As the preamble in Section 18-9-122(1) openly proclaims, Colorado's restrictions were designed to restrict the "right to protest or counsel *against*" what the statute describes as "certain medical procedures." COLO. REV. STAT § 18-9-122(1) (emphasis added).

42.     The viewpoint-based nature of Section 18-9-122(3)'s restrictions is also evident from the historical background of the law. The legislative history of the law is overwhelmingly comprised of debate and testimony discussing pro-life political expression outside of abortion clinics: both by those who were critical of this pro-life expression (such as representatives of Planned Parenthood, abortion clinic employees, and pro-choice activists) and by those who defended it (such as pro-life activists and sidewalk counselors). *See* Joint Appendix at 58a–216a, *Hill v. Colorado*, No. 98-1856 (U.S. Nov. 10, 1999), 1999 WL 33612749.

43.     As the Supreme Court explained in *Hill*, Section 18-8-122(3)'s legislative history thus "makes it clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics." 530 U.S. at 715.

44.     There is no indication, in *Hill* or in the legislative record, that Section 18-8-122(3) was designed to curb *pro-choice* political expression.

45.     Accordingly, "[t]he purpose and design of the statute—as everyone ought to know and as its own defenders urge in attempted justification—are to restrict speakers on one side of the debate: those who protest abortions." *Id.* at 768 (Kennedy, J., dissenting).

46.     Section 18-8-122(3)'s content-based ban on approaching women outside of abortion clinics to counsel them is not narrowly tailored to serve any compelling governmental interest. Indeed, it is not even properly tailored to serve any significant or important governmental interest.

47.     *Hill* holds that the core purpose of Section 18-8-122(3) is to protect "the unwilling listener's interest in avoiding unwanted communication" in quintessentially public spaces. *Id.* at 716 (majority opinion). That is not a legitimate governmental interest, let alone a compelling one. Indeed, "if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." *Id.* at 749 (Scalia, J., dissenting).

48.     To the extent that Section 18-8-122(3) is justified instead as advancing the interests of promoting public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways, it is not narrowly tailored to further those interests because there are other available, far less intrusive means of doing so.

49.     For instance, subsection 2 of Colorado's law—which Plaintiff does not challenge here—already makes it a crime if anyone "knowingly obstructs, detains, hinders, impedes, or

blocks another person's entry to or exit from a health-care facility." COLO. REV. STAT § 18-9-122(2).

50.     Similarly, the federal Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") makes it a crime if anyone "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1).

51.     Likewise, a Denver municipal ordinance already makes it unlawful for any person to either (1) "[o]bstruct a highway, street, sidewalk . . . [or] building entrance . . . to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances," or (2) "[d]isobey a reasonable request or order to move . . . to prevent obstruction of a highway or passageway or to maintain public safety." DENVER CODE OF ORDINANCES § 38-86(1); *accord* DENVER CODE OF ORDINANCES § 7-6B-6.

### III.     Denver's Restrictions on Speech Outside Abortion Clinics.

52.     Section 18-9-122 leaves local jurisdictions with authority to "adopt[ ] a law for the control of access to health-care facilities that is no less restrictive than the provisions of this section." COLO. REV. STAT. § 18-9-122(5).

53.     Consistent with this authority, the City and County of Denver has adopted a municipal ordinance substantially identical to Section 18-9-122(3). DENVER CODE OF ORDINANCES § 38-114(b) provides:

> No person shall knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred (100) feet from any entrance door to a health care facility.

DENVER CODE OF ORDINANCES § 38-114(b).

54.     Similar to its state-law counterpart, Denver's ordinance defines "[h]ealth care facility" as "[a]ny licensed or certified medical or health care facility within the City and County of Denver or any office or clinic within the City and County of Denver regularly used by any licensed health care provider to provide medical, nursing or health care to patients." *Id*. § 38-114(a).

55.     "Health-care facilities" include abortion clinics within the City and County of Denver.

56.     DENVER CODE OF ORDINANCES § 38-114(b)'s restriction on approaching people entering abortion clinics to offer them "a leaflet or handbill" or to "engag[e] in oral protest, education, or counseling" with them thus surgically targets the pro-life practice known as "sidewalk counseling," effectively banning it without first obtaining the person's affirmative consent. *Id*.

57.     The punishment for each violation of DENVER CODE OF ORDINANCES § 38-114(b)'s ban on approaching women outside of abortion clinics to counsel them is a fine of up to $999, jail time up to 300 days, or both. *See* DENVER CODE OF ORDINANCES § 1-13(b).

58.     Defendants City and County of Denver, Tipper, and Thomas actively enforce DENVER CODE OF ORDINANCES § 38-114(b).

59.     DENVER CODE OF ORDINANCES § 38-114(b)'s restriction on oral communications outside health care facilities is content-based on its face. While DENVER CODE OF ORDINANCES § 38-114(b) bars oral communications that constitute "protest," "education," or "counseling," it does not bar any other type of oral communication. *Id*. Accordingly, the Ordinance unambiguously draws distinctions based on the message a speaker conveys, and enforcement authorities seeking

to determine whether an individual's speech falls within the Ordinance must examine the content of the message that is conveyed to determine whether a violation has occurred.

60.     DENVER CODE OF ORDINANCES § 38-114(b) is also content-based because it defines regulated speech by its function or purpose. The provision only applies to a person who approaches within eight feet of another to speak with them *for a particular purpose*: "for the purpose of . . . engaging in oral protest, education, or counseling with such other person." *Id*. Approaching someone to speak for any other purpose is freely permitted.

61.     DENVER CODE OF ORDINANCES § 38-114(b)'s ban is also facially content-based because it applies only to speech outside of a "medical or health care facility." *Id*. § 38-114(a). That limitation to "protest, education, or counseling" that occurs only in specific locations is a content-based determination. *Id*. § 38-114(b).

62.     DENVER CODE OF ORDINANCES § 38-114(b)'s ban on approaching women outside of abortion clinics to counsel them is content-based not only on its face but also because it cannot be justified without reference to the content of the regulated speech.

63.     In *Hill*, the Supreme Court held that COLO. REV. STAT. § 18-9-122(3)'s purpose is to "protect listeners from unwanted communication." *Hill*, 530 U.S. at 716. And in an amicus brief filed before the Supreme Court in *Hill*, the City and County of Denver represented that its own ordinance (the predecessor of DENVER CODE OF ORDINANCES § 38-114(b)) was "similar in content, and purpose, to the statute that is the subject of this litigation." Amici Br. of the City of Boulder & the City & Cnty. of Denver at 1, *Hill v. Colorado*, No. 98-1856 (U.S. Dec. 13, 1999), 1999 WL 1186251. Denver went on to explain, consistent with the Supreme Court's ultimate holding, that this purpose was to protect against the "substantial negative impact" that "protest activity" outside of abortion clinics purportedly has "on patients that encounter these demonstrations." *Id.* at 20.

But protecting against the "undesirable effects that arise from the direct impact of speech on its audience" is "not . . . a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481 (internal quotation marks omitted).

64.     The City and County of Denver's amicus brief in *Hill* further makes clear that DENVER CODE OF ORDINANCES § 38-114(b) is not only content-based, but also viewpoint-based. In explaining the "similar . . . purpose" of COLO. REV. STAT. § 18-9-122(3), Denver discussed at length the "substantial negative impact of protest activity on patients attempting to obtain healthcare services," as purportedly shown by the legislative testimony of a nurse at one abortion clinic, and a volunteer at another, describing the pro-life political speech that had taken place outside those clinics. Amici Br. of the City of Boulder & the City & Cnty. of Denver, *supra*, at 1, 4, 16.

65.     There is no indication that DENVER CODE OF ORDINANCES § 38-114(b) was designed to curb *pro-choice* political expression.

66.     DENVER CODE OF ORDINANCES § 38-114(b)'s content-based ban on approaching women outside of abortion clinics to counsel them is not narrowly tailored to serve any compelling governmental interest. Indeed, it is not even properly tailored to serve any significant or important governmental interest.

67.     To the extent that DENVER CODE OF ORDINANCES § 38-114(b)'s purpose, like Section 18-8-122(3)'s, is to protect "the unwilling listener's interest in avoiding unwanted communication" in quintessentially public spaces, *Hill* 530 U.S. at 716, that is not a legitimate governmental interest, let alone a compelling one. Indeed, "if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." *Id.* at 748–49 (Scalia, J., dissenting).

68.     To the extent that DENVER CODE OF ORDINANCES § 38-114(b) is justified instead as advancing the interests of promoting public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways, it is not narrowly tailored to further those interests because there are other available, far less intrusive means of doing so.

69.     For instance, COLO. REV. STAT § 18-9-122(2)—which Plaintiff does not challenge here—already makes it a crime if anyone "knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit from a health-care facility." COLO. REV. STAT § 18-9-122(2).

70.     Similarly, the federal Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") makes it a crime if anyone "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1).

71.     Likewise, another Denver municipal ordinance already makes it unlawful for any person to either (1) "[o]bstruct a highway, street, sidewalk . . . [or] building entrance . . . to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances," or (2) "[d]isobey a reasonable request or order to move . . . to prevent obstruction of a highway or passageway or to maintain public safety." DENVER CODE OF ORDINANCES § 38-86(1).

## IV.   The Bans' Impact on Ms. Faustin's Speech.

72.     COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) impose draconian burdens on the speech activity known as "sidewalk counseling" by preventing

people from approaching women entering abortion clinics and offering them guidance, counsel, and information at a normal conversational distance.

73.     COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) apply "within a radius of one hundred feet from any entrance door" to an abortion clinic, encompassing the area outside of a clinic where Ms. Faustin can meaningfully identify and talk with women who are entering the facility to obtain an abortion. COLO. REV. STAT § 18-9-122(3).

74.     COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) thus require Ms. Faustin to remain eight feet away from the women she wishes to talk with and attempt to persuade. This mandatory eight-foot remove is well outside of the distance in which normal, private conversations can occur. To speak with women while still complying with COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), therefore, usually Ms. Faustin is effectively forced to shout.

75.     That makes it impossible for Ms. Faustin to engage in the type of speech that she believes most effective. "[T]he 'counseling' and 'educating' likely to take place outside a health care facility cannot be done at a distance and at a high-decibel level." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting)). Ms. Faustin "hopes to forge, in the last moments before another of her sex is to have an abortion, a bond of concern and intimacy that might enable her to persuade the woman to change her mind and heart," and she simply cannot do this by shouting from eight feet away. *Id.* Defendants' eight-foot buffer zone thus forces Ms. Faustin "to rais[e] her voice at patients from outside the zone—a mode of communication sharply at odds with the compassionate message she wishes to convey." *McCullen*, 573 U.S. at 487.

76.     COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) hold out the possibility that Ms. Faustin could approach a woman entering an abortion clinic by

obtaining her consent, but that affirmative consent requirement is itself a significant burden on Plaintiff's speech. A request for consent to approach shouted from eight feet away is easily ignored by women who are hurriedly entering a clinic. "[I]ndeed, by the time [Ms. Faustin] requested it they would likely have passed by." *Hill*, 530 U.S. at 758 (Scalia, J., dissenting).

77. More fundamentally, requiring Ms. Faustin to begin her conversation with a woman entering an abortion clinic by shouting a request for consent from eight feet away itself forces her to alter her intended message in a way that is antithetical to her "ability to initiate the close, personal conversations" she wishes to have with these women. *McCullen*, 573 U.S. at 487.

78. The key "virtue" of "public streets and sidewalks" is that "they remain one of the few places where a speaker can be confident that he is not simply preaching to the choir," but instead is able to confront listeners "with an uncomfortable message" that they "might otherwise tune out." *Id.* at 476. Defendants' requirement that Ms. Faustin obtain affirmative consent before speaking to women in the streets and sidewalks outside abortion clinics eliminates this crucial feature of the speech that ordinarily can take place in these public fora.

79. Colo. Rev. Stat § 18-9-122(3) and Denver Code of Ordinances § 38-114(b) also significantly hinder Ms. Faustin's ability to tender leaflets or pamphlets to women entering abortion clinics providing information about the nature of their unborn children, the procedure, and other available alternatives and resources.

80. "To solicit by pamphlet is to tender it to the person." *Hill*, 530 U.S. at 789 (Kennedy, J., dissenting). But Colo. Rev. Stat § 18-9-122(3) and Denver Code of Ordinances § 38-114(b) forbid Ms. Faustin from approaching women entering clinics "in time to place literature near their hands—the most effective means of getting the patients to accept it." *McCullen*, 573 U.S. at 488. Requiring Plaintiff to obtain affirmative consent to proffer a leaflet, at

the reach of eight feet or more—or else to "wait for passersby voluntarily to approach an outstretched hand"—renders this form of communication "utterly ineffectual." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting).

81.     In some locations, COLO. REV. STAT § 18-9-122(3)'s restriction on Ms. Faustin's ability to speak with women entering abortion clinics is even more onerous. For instance, most women obtaining abortions at the Healthy Futures Clinic at 300 E Hampden Ave 201, Englewood, CO 80113 arrive by car and park in the clinic's parking lot. By banning Ms. Faustin from approaching these women's vehicles as they cross the sidewalk and drive towards the clinic's parking lot, COLO. REV. STAT § 18-9-122(3) prevents her from speaking to these women *at all*, except by shouting at them from outside the parking lot as they get out of their vehicles.

82.     COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) have prevented Ms. Faustin's speech on numerous occasions.

83.     In one instance in the past few months, for example, Ms. Faustin called out to a young woman entering the Healthy Futures clinic, from the required distance of eight feet or more, and asked if she could give her some information on the nature of abortion and possible alternatives. The young woman declined to give consent, and Ms. Faustin was prevented by COLO. REV. STAT § 18-9-122(3) from engaging with her further.

84.     If it were not for COLO. REV. STAT § 18-9-122(3), Ms. Faustin would have begun her interaction with the young woman in a more personal and conversational manner and have attempted "to forge . . . a bond of concern and intimacy that might enable her to persuade the woman to change her mind and heart." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting). The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) against her forced her to refrain from engaging in that speech.

85. If it were not for COLO. REV. STAT § 18-9-122(3), Ms. Faustin would also have tendered written information concerning abortion and its alternatives in the far more effective manner of "walk[ing] a few steps toward" the young woman, "extending [her] arm and making it *as easy as possible*" for her "to simply accept the offering." *Id.* at 758. The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) against her forced Plaintiff to refrain from tendering written information in that way.

86. Similarly, on another occasion in the past few months, COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) restricted Ms. Faustin's pro-life speech outside of the Mile High Women's Clinic, at 4545 E 9th Ave #502, Denver, CO 80220. When Ms. Faustin was speaking outside of the Mile High Women's Clinic, COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) limited her to calling out to women entering the clinic from a distance of over eight feet away and asking if they would give her permission to approach them to speak with them and give them written information about the nature of their unborn children, the procedure, and other available alternatives and resources.

87. If it were not for COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), Ms. Faustin would have begun her interactions with the young women entering the Mile High Women's Clinic in a more personal and conversational manner and would have attempted "to forge . . . a bond of concern and intimacy that might enable her to persuade the woman to change her mind and heart." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting). The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her forced her to refrain from engaging in that speech.

88. If it were not for COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), Ms. Faustin would also have tendered written information concerning

abortion and its alternatives in the far more effective manner of "walk[ing] a few steps toward" each young woman entering the Mile High Women's Clinic, "extending [her] arm and making it *as easy as possible*" for her "to simply accept the offering." *Id.* at 758. The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her forced Plaintiff to refrain from tendering written information in that way.

89.    Ms. Faustin believes passionately in the importance of speaking with young women coming into abortion clinics and presenting them with more information and alternatives, and she will continue to peacefully and compassionately speak outside of abortion clinics in the Denver area in the limited ways that COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) allow.

90.    But if it were not for Defendants' enforcement of those laws, Ms. Faustin would imminently and repeatedly speak with young women outside of the Healthy Futures clinic, the Mile High Women's Clinic, and other abortion clinics in the Denver area, in the far more effective manner that is banned by those provisions: by approaching them within a normal conversational distance under eight feet, presenting them with written information about the nature of their unborn children, the procedure, and other available alternatives and resources, and attempting to engage them in a peaceful and compassionate conversation about these matters in an effort to persuade them to pursue an alternative to abortion.

91.    Ms. Faustin continues to refrain from this speech only because she credibly fears Defendants will enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her.

92.    Defendants' actions, taken under color of state law, have denied Ms. Faustin's rights and privileges secured under the U.S. Constitution's First Amendment as applied to the

States through the Fourteenth Amendment. Because of Defendants' actions, Ms. Faustin has suffered, and continues to suffer, irreparable harm.

## COUNT ONE – FREEDOM OF SPEECH

**42 U.S.C. § 1983 Action Challenging Defendants' Enforcement of**
**COLO. REV. STAT. § 18-9-122(3) under U.S. CONST. amends. I and XIV**
**(Against Defendants Polis, Weiser, Kellner, Watson, McCann, and Thomas)**

93.    Plaintiff hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

94.    Public sidewalks and streets outside of abortion clinics in Colorado are quintessential public forums for free speech.

95.    Distributing leaflets discussing abortion, its risks and implications, and its alternatives is core expression protected by the Free Speech Clause of the First Amendment.

96.    Orally discussing abortion, its risks and implications, and its alternatives with persons entering an abortion clinic is core expression protected by the Free Speech Clause of the First Amendment.

97.    The Fourteenth Amendment to the U.S. Constitution incorporates the First Amendment against the State of Colorado.

98.    COLO. REV. STAT. § 18-9-122(3) burdens and impedes Plaintiff's ability to distribute leaflets discussing abortion, its risks and implications, and its alternatives to women entering abortion clinics in Colorado.

99.    COLO. REV. STAT. § 18-9-122(3) burdens and impedes Plaintiff's ability to speak orally about abortion, its risks and implications, and its alternatives with women entering abortion clinics in Colorado.

100.    COLO. REV. STAT. § 18-9-122(3)'s burden on speech is content-based, both because it draws content-based distinctions on its face and because it cannot be justified without reference to the content of the regulated speech.

101.    COLO. REV. STAT. § 18-9-122(3)'s burden on speech is also viewpoint-based, both because it targets speech by one side of the abortion debate on its face and because its design and effect is to restrict speech on one side of the abortion debate.

102.    COLO. REV. STAT. § 18-9-122(3)'s burden on speech is not narrowly tailored to serve any compelling, significant, or important government interest.

103.    Accordingly, COLO. REV. STAT. § 18-9-122(3) is unconstitutional under the First Amendment's Free Speech Clause, as incorporated against the State of Colorado under the Fourteenth Amendment, both on its face and as applied to Plaintiff Faustin.

### COUNT TWO – FREEDOM OF SPEECH

**42 U.S.C. § 1983 Action Challenging Defendants' Enforcement of**
**DENVER CODE OF ORDINANCES § 38-114(b) under U.S. CONST. amends. I and XIV**
**(Against Defendants City and County of Denver, Tipper, and Thomas)**

104.    Plaintiff hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

105.    Public sidewalks and streets outside of abortion clinics in the City and County of Denver are quintessential public forums for free speech.

106.    Distributing leaflets discussing abortion, its risks and implications, and its alternatives is core expression protected by the Free Speech Clause of the First Amendment.

107.    Orally discussing abortion, its risks and implications, and its alternatives with persons entering an abortion clinic is core expression protected by the Free Speech Clause of the First Amendment.

108. The Fourteenth Amendment to the U.S. Constitution incorporates the First Amendment against the City and County of Denver.

109. DENVER CODE OF ORDINANCES § 38-114(b) burdens and impedes Plaintiff's ability to distribute leaflets discussing abortion, its risks and implications, and its alternatives to women entering abortion clinics in Denver.

110. DENVER CODE OF ORDINANCES § 38-114(b) burdens and impedes Plaintiff's ability to speak orally about abortion, its risks and implications, and its alternatives with women entering abortion clinics in Denver.

111. Plaintiff has, on at least one occasion within the last two years, been prevented from distributing leaflets discussing abortion, its risks and implications, and its alternatives to women entering abortion clinics in Denver, by fear that DENVER CODE OF ORDINANCES § 38-114(b) would be enforced against her.

112. Plaintiff has, on at least one occasion within the last two years, been prevented from speaking orally about abortion, its risks and implications, and its alternatives with women entering abortion clinics in Denver, by fear that DENVER CODE OF ORDINANCES § 38-114(b) would be enforced against her.

113. DENVER CODE OF ORDINANCES § 38-114(b)'s burden on speech is content-based, both because it draws content-based distinctions on its face and because it cannot be justified without reference to the content of the regulated speech.

114. DENVER CODE OF ORDINANCES § 38-114(b)'s burden on speech is also viewpoint-based, because its design and effect is to restrict speech on one side of the abortion debate.

115. DENVER CODE OF ORDINANCES § 38-114(b)'s burden on speech is not narrowly tailored to serve any compelling, significant, or important government interest.

116.     Accordingly, DENVER CODE OF ORDINANCES § 38-114(b) is unconstitutional under the First Amendment's Free Speech Clause, as incorporated against the City and County of Denver under the Fourteenth Amendment, both on its face and as applied to Plaintiff Faustin.

## JURY DEMAND

117.     Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

118.     WHEREFORE, Plaintiff prays for an order and judgment:

a.     Declaring that Colorado's restriction on speech outside of health-care facilities, as set forth in COLO. REV. STAT. § 18-9-122(3), violates the First and Fourteenth Amendments and is thus devoid of any legal force or effect;

b.     Declaring that the City and County of Denver's restriction on speech outside of health-care facilities, as set forth in DENVER CODE OF ORDINANCES § 38-114(b), violates the First and Fourteenth Amendments and is thus devoid of any legal force or effect;

c.     Enjoining Defendants and their employees and agents from enforcing COLO. REV. STAT. § 18-9-122(3) in any manner, including by arresting or prosecuting persons for engaging in the activity proscribed by that provision;

d.     Enjoining Defendants and their employees and agents from enforcing DENVER CODE OF ORDINANCES § 38-114(b) in any manner, including by arresting or prosecuting persons for engaging in the activity proscribed by that provision;

e.     Awarding Plaintiff nominal damages, pursuant to Count Two only, to compensate her for the harm suffered as a result of the City and County of Denver's deprivation of her constitutional rights;

f. Awarding Plaintiff, against Defendants jointly and severally, her reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

g. Granting such other and further relief as this Court deems just and proper.

Dated:  June 1, 2023                    Respectfully submitted,

Jeffrey C. Mateer                        s/ Charles J. Cooper
David J. Hacker                          Charles J. Cooper
Roger Byron                              *Counsel of Record*
Lea E. Patterson                         COOPER & KIRK, PLLC
FIRST LIBERTY INSTITUTE                  David H. Thompson
2001 West Plano Pky., Ste. 1600          John D. Ohlendorf
Plano, Texas 75075                       1523 New Hampshire Avenue, N.W.
(972) 941-4444                           Washington, D.C. 20036
(972) 941-4457 (fax)                     (202) 220-9600
                                         (202) 220-9601 (fax)
                                         ccooper@cooperkirk.com

*Counsel for Plaintiff*