**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01376-GPG-NRN

WENDY FAUSTIN,

*Plaintiff*,

v.

JARED POLIS, in his official capacity as Governor of Colorado;
PHILIP J. WEISER, in his official capacity as Colorado Attorney General;
CITY AND COUNTY OF DENVER;
BETH MCCANN, in her official capacity as District Attorney for the 2nd Judicial District;
KERRY C. TIPPER, in her official capacity as City Attorney of Denver; *and*
RON THOMAS, in his official capacity as Chief of the Denver Police Department,

*Defendants*.

---

**ANSWER OF JARED POLIS AND PHILIP J. WEISER TO AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES**

---

**Defendants Jared Polis and Philip J. Weiser, in their official capacities as Governor of Colorado and Attorney General of Colorado respectively (collectively, the "State Defendants," submit this Answer to Plaintiffs' Amended Complaint (Doc. No. 69).**

**ANSWER TO INTRODUCTION**

1. The First Amendment's Free Speech Clause guarantees the fundamental right of "those who share an abiding moral or religious conviction (or, for that matter, simply a biological appreciation) that abortion is the taking of a human life" to try "to persuade women, one by one, not to make that choice" in "the most effective place, if not the only place, where that persuasion can occur"—"outside the entrances to abortion facilities." *Hill v. Colorado*, 530

U.S. 703, 763 (2000) (Scalia, J., dissenting). Indeed, this "freedom to speak and persuade is inseparable from, and antecedent to, the survival of self-government." *Id.* at 763–64.

**The allegations in Paragraph 1 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 1.**

2. Plaintiff Wendy Faustin believes that abortion is a horrific moral wrong that not only takes the life of an unborn human person but also causes lasting damage to each mother who undergoes one. She wishes to personally and compassionately talk to women seeking abortions, and give them further information related to the procedure and other available options, in an attempt to convince them to pursue an alternative to abortion—a form of speech commonly known as "sidewalk counseling." She wishes to try to persuade these women in the only place and at the only time she realistically can: outside of the abortion clinic, in the last few minutes before they obtain the abortion.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 2, and therefore deny them.**

3. Defendants, state and local officials in the State of Colorado and the City and County of Denver, have acted to "make . . . that task an impossible one." *Id.* at 763. In substantively identical provisions, Colorado and Denver ban anyone from "knowingly approach[ing] another person within eight feet" in the sidewalks and streets outside the entrance to abortion clinics "for the purpose of passing a leaflet or handbill to . . . , or engaging in oral protest, education, or counseling with such other person." COLO. REV. STAT. § 18-9-122(3); *accord* DENVER CODE OF ORDINANCES § 38-114(b). That ban effectively eliminates

Plaintiff Faustin's "ability to initiate the close, personal conversations that [she] view[s] as essential to 'sidewalk counseling.'" *McCullen v. Coakley*, 573 U.S. 464, 487 (2014). It thus "impose[s] serious burdens on [Plaintiff's] speech." *Id.*

**The State Defendants admit that Defendants are state and local officials in the State of Colorado and the City and County of Denver. The State Defendants admit that section 18-9-122(3) prohibits "knowingly approach[ing] another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility." The State Defendants deny the remaining allegations in Paragraph 3.**

4. Defendants' ban on approaching women outside of abortion clinics to speak with them unquestionably discriminates based on the content—and even the viewpoint—of speech. On its face, the ban applies only to speech with a particular purpose and message: speech "for the purpose . . . of engaging in oral protest, education, or counseling." COLO. REV. STAT. § 18-9-122(3). And it targets only that speech on *one side* of the abortion debate: speech "protest[ing] or counsel[ing] *against*" what Colorado euphemistically terms "certain medical procedures." *Id.* § 18-9-122(1) (emphasis added). Moreover, as the Supreme Court's majority opinion in *Hill* makes clear, Defendants' ban is also content- and viewpoint-based due to the nature of its justification: protecting the "unwilling listener's interest in avoiding unwanted communication" from pro-life speakers when seeking "access to a medical facility."

*Hill*, 530 U.S. at 716, 717. That effort to limit "the direct impact of speech on its audience" is "not . . . a content-neutral justification." *McCullen*, 573 U.S. at 481.

**The State Defendants deny the allegations in Paragraph 4.**

5. Indeed, the interest in limiting speech because it "cause[s] offense or ma[kes] listeners uncomfortable," *id.*—which *Hill* established as the *core justification* of Colorado's ban, *see* 530 U.S. at 715–18—is not even a *legitimate* one, let alone sufficiently compelling to justify a content-based restriction on speech. "Suffice it to say that if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." *Id.* at 748–49 (Scalia, J., dissenting). Nor are Defendants' restrictions on speech narrowly tailored to advance any other compelling interest. They are thus inconsistent with the First Amendment and must be struck down.

**The State Defendants deny the allegations in Paragraph 5.**

6. Plaintiff acknowledges that the result she seeks is contrary to currently governing precedent as set forth by the majority opinion in *Hill*. But for the reasons explained by the dissents in that case and in later Supreme Court precedent, that case was wrongly decided, is irreconcilable with intervening precedent, and has severely "distorted First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022); *see Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *McCullen v. Coakley*, 573 U.S. 464 (2014). She therefore institutes this litigation to vindicate her First Amendment rights and to seek to have *Hill* overruled.

**The State Defendants admit that the relief requested by Plaintiff is contrary to currently governing precedent as set forth by the majority opinion in *Hill v. Colorado*, 530 U.S. 703, 763 (2000). The State Defendants deny the remaining allegations in Paragraph 6.**

**ANSWER TO JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over Plaintiff's claim under 28 U.S.C. §§ 1331 and 1343.

**The State Defendants admit the Court has jurisdiction over the claims asserted by Plaintiff under the statutory sections cited by Plaintiff if Plaintiff satisfies her burden of proving standing; the State Defendants deny that Plaintiff has standing. Any remaining allegations in Paragraph 7 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 7.**

8. Plaintiff seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

**The State Defendants deny that Plaintiff is entitled to remedies under any of the cited statutory sections.**

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

**The State Defendants admit that venue is proper in this Court over the claims asserted against the State Defendants by Plaintiff.**

**PARTIES**

10. Plaintiff Wendy Faustin is a citizen of the United States and a resident of the State of Colorado. She resides in Denver, CO.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 10, and therefore deny them.**

11. Defendant Jared Polis is the Governor of Colorado. As Colorado's chief executive official, Polis is responsible for overseeing the enforcement and administration of the State's criminal laws, including COLO. REV. STAT. § 18-9-122. His official address is State Capitol Building, 200 E. Colfax Ave., Rm. 136, Denver, CO 80203. He is being sued in his official capacity.

**The State Defendants admit that Jared Polis is the Governor of Colorado. The State Defendants admit that the supreme executive power of the state is vested in the Governor under Colo. Const. art. IV section 2, but deny that Governor Polis is solely responsible for overseeing the enforcement and administration of the state's criminal laws.[1] The State Defendants admit that Governor's Polis's official address is listed correctly in Paragraph 11, and that he is being sued in his official capacity.**

---

[1] **The Governor enjoys Eleventh Amendment sovereign immunity from suit where he is sued in his official capacity "'to enjoin the enforcement of an act alleged to be unconstitutional,'" *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)), but does not "'have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty,'" *id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)); *see also Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965–68 (10th Cir. 2021) (same; collecting cases). Section 18-9-122 is a criminal statute, and the Complaint does not allege that the Governor has prosecuted persons under section 18-9-122. Compl. (Doc. No. 1). But for the purpose of defending section 18-9-122 against Plaintiff's First Amendment challenge here, which seeks only declaratory and injunctive relief against the Governor, see *id.*, the Governor agrees to waive his sovereign immunity and consents to be sued in this Court in only this case, in only his official capacity, and only for prospective relief. *See MCI Telecomms. Corp. v. Pub. Serv. Comm'n of Utah*, 216 F.3d 929, 935 (10th Cir. 2000) ("[A] state may waive its sovereign immunity by consenting to suit in federal court.").**

12. Defendant Philip J. Weiser is the Attorney General of Colorado. As Attorney General, he serves as the chief legal representative of the State and has authority to prosecute and defend all actions and proceedings in which the State is a party. His official address is Office of the Attorney General, Colorado Department of Law, Ralph L. Carr Judicial Building, 1300 Broadway, 10th Floor, Denver, CO 80203. He is being sued in his official capacity.

**The State Defendants admit that Philip J. Weiser is the Attorney General of Colorado. The State Defendants admit that the Attorney General's authority is delineated by §24-31-101, C.R.S.[2] The State Defendants admit that Attorney General Weiser's official address is listed correctly, and that he is being sued in his official capacity.**

13. The City and County of Denver is a duly chartered municipal corporation in the State of Colorado. One of the City and County's ordinances, DENVER CODE OF ORDINANCES § 38- 114, is being challenged in this lawsuit. The City and County is represented in civil litigation by its City Attorney's Civil Litigation Section, 201 W. Colfax Ave., Dept. 1108, Denver, CO 80202.

---

[2] **The Attorney General enjoys Eleventh Amendment sovereign immunity from suit where he is sued in his official capacity "'to enjoin the enforcement of an act alleged to be unconstitutional,'" *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)), but does not "'have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty,'" *id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)); *see also Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965–68 (10th Cir. 2021) (same; collecting cases). Section 18-9-122 is a criminal statute, and Complaint does not allege that the Attorney General has prosecuted persons under section 18-9-122. Compl. Doc. No. 1. But for the purpose of defending section 18-9-122 against Plaintiff's First Amendment challenge here, which seeks only declaratory and injunctive relief against the Attorney General, *see id.*, the Attorney General agrees to waive his sovereign immunity and consents to be sued in this Court in only this case, in only his official capacity, and only for prospective relief. *See MCI Telecomms. Corp. v. Pub. Serv. Comm'n of Utah*, 216 F.3d 929, 935 (10th Cir. 2000) ("[A] state may waive its sovereign immunity by consenting to suit in federal court.").**

**The State Defendants admit that the City and County of Denver is a duly chartered municipal corporation in the State of Colorado. The State Defendants also admit that Denver Code of Ordinances § 38-114 is being challenged in this lawsuit. The State Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 13, and therefore deny them.**

14. Beth McCann is the District Attorney for the 2nd Judicial District, which encompasses the City and County of Denver. As District Attorney, she has authority to appear on behalf of the State and prosecute all actions pending within the City and County of Denver, including actions under COLO. REV. STAT. § 18-9-122. Her official address is 201 Colfax Avenue, 8th Floor, Denver, CO 80202. She is being sued in her official capacity.

**The State Defendants admit that Beth McCann is the District Attorney for the 2nd Judicial District, which encompasses the City and County of Denver. The State Defendants admit that by statute, section 20-1-102, C.R.S., district attorneys have the authority to appear on behalf of the state in all indictments, actions, and proceedings which may be pending in the district court in any county within their district. The State Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore deny them.**

15. Kerry C. Tipper is the City Attorney of the City and County of Denver. As City Attorney, she serves as the chief legal advisor to the City and County and its officials, represents the City and County in civil litigation, and has authority to prosecute violations of the City and County's ordinances, including DENVER CODE OF ORDINANCES § 38-114. Her official

address is 201 Colfax Avenue, Dept. 1108, Denver, CO 80202. She is being sued in her official capacity.

**The State Defendants admit that Kerry C. Tipper is the City Attorney of the City and County of Denver. The State Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 15, and therefore deny them.**

16. Ron Thomas is the Chief of the Denver Police Department. As Chief of Police, he is responsible for supervising the enforcement of all criminal prohibitions and restrictions within the City and County of Denver, including COLO. REV. STAT. § 18-9-122 and DENVER CODE OF ORDINANCES § 38-114. His official address is Police Administration Building, 1331 Cherokee Street, Denver, CO 80204. He is being sued in his official capacity.

**The State Defendants admit that Ron Thomas is the Chief of the Denver Police Department. The State Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 16, and therefore deny them.**

## ANSWER TO FACTUAL ALLEGATIONS

### I. Answer to Ms. Faustin's Speech.

17. Ms. Faustin believes that life begins at conception, that all human life has God-given worth and dignity, and that ending the life of the unborn is morally wrong. She feels compelled by these beliefs to advocate publicly on behalf of the unborn. She has been actively involved in the pro-life movement in various roles since 1981. She is active in supporting crisis pregnancy centers in the Denver area. She has actively supported pro-life candidates for public office.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 17, and therefore deny them.**

18. As part of her efforts on behalf of the pro-life movement, Ms. Faustin was actively engaged in sidewalk counseling before COLO. REV. STAT. § 18-9-122 and DENVER CODE OF ORDINANCES § 38-114 took effect. Ms. Faustin feels she is called by God to defend the unborn in any way that she can and that one of the most effective ways of doing so is by peacefully approaching women entering abortion clinics to try to educate them about the nature of the unborn child developing inside them and inform them about alternatives to abortion.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 18, and therefore deny them.**

19. As discussed at greater length below, COLO. REV. STAT. § 18-9-122 and DENVER CODE OF ORDINANCES § 38-114 severely restrict Ms. Faustin's ability to engage in sidewalk counseling; but she continues to regularly and actively speak peacefully and compassionately to women entering abortion clinics to the limited extent those laws allow. Typically, Ms. Faustin's speech now involves standing on a sidewalk close enough to the clinic's door to identify women who are entering it (and thus within 100 feet of the entrance); displaying a sign with a pro-life message; and calling out to women to ask them if she can speak with them about, and give them written information concerning, the nature of their unborn children, the procedure, and other available alternatives and resources.

**The State Defendants deny that section 18-9-122 C.R.S. and Denver Code of Ordinances § 38-114 severely restrict Ms. Faustin's ability to engage in sidewalk counseling.**

**The State Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 19 and therefore deny them.**

20. Since the early 1990's, Ms. Faustin has regularly engaged in these forms of speech outside of abortion clinics in the Denver metropolitan area. Specifically, she has engaged in these forms of speech outside of the clinic Healthy Futures' previous location at 300 E Hampden Ave 201, Englewood, CO 80113, outside of Health Futures' current location at 1634 N. Downing St., Denver, CO 80218, and outside of Mile High OBGYN, located at 4545 E 9th Ave #502, Denver, CO 80220, among others.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 20, and therefore deny them.**

21. Ms. Faustin is also interested in engaging in these forms of speech outside of the clinic Partners In Women's Health, located at 4500 E 9th Ave #700, Denver, CO 80220.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 21, and therefore deny them.**

22. All of these clinics are located next to public sidewalks that are less than 100 feet from the clinic's entrance.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 22, and therefore deny them.**

23. When Ms. Faustin speaks to women entering a clinic, she is peaceful, gentle and kind. Indeed, she believes that speaking to these women in a loud or confrontational way hampers the effectiveness of her message. She merely wishes to provide the women seeking abortions with

more information about the nature of their unborn children, the procedure, and other available alternatives and resources.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 23, and therefore deny them.**

24. Ms. Faustin also seeks to tender leaflets or pamphlets to women entering abortion clinics providing information about the nature of their unborn children, the procedure, and other available alternatives and resources.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 24, and therefore deny them.**

25. Ms. Faustin knows that every day, unborn children are being aborted in the clinics in her area, causing the loss of the child's life and permanent emotional and spiritual damage to their mothers. She feels morally compelled to try to speak peacefully with the women entering these clinics to give a voice to their unborn children.

**The State Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 25, and therefore deny them.**

## II. Answer to Colorado's Restrictions on Speech Outside Abortion Clinics.

26. The State of Colorado imposes severe, content-based restrictions on the speech that may occur outside of abortion clinics. COLO. REV. STAT. § 18-9-122(3) provides:

> No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility.

**The State Defendants deny that the State of Colorado imposes severe, content-based restrictions on the speech that may occur outside of abortion clinics. The State Defendants admit that Paragraph 26 accurately quotes section 18-9-122(3), C.R.S.**

27. Section 18-9-122(4) defines "health-care facility" to mean "any entity that is licensed, certified, or otherwise authorized or permitted by law to administer medical treatment in this state." COLO. REV. STAT. § 18-9-122(4).

**The State Defendants admit that Paragraph 27 accurately quotes section 18-9-122(4), C.R.S.**

28. "Health-care facilities" include abortion clinics within Colorado.

**The State Defendants admit that "health-care facility" as defined in section 18-9-122(4), C.R.S. can include clinics where reproductive health care, including abortion care, is administered.**

29. Section 18-9-122(3)'s restriction on approaching people entering abortion clinics to offer them "a leaflet or handbill" or to "engag[e] in oral protest, education, or counseling," COLO. REV. STAT. § 18-9-122(3), with them thus surgically targets the pro-life practice known as "sidewalk counseling," effectively banning it without first obtaining the person's affirmative consent.

**The State Defendants deny the allegations in Paragraph 29.**

30. The punishment for each violation of Section 18-9-122(3)'s ban on approaching women outside of abortion clinics to counsel them is a fine of up to $300, jail time up to ten days, or both. *See* COLO. REV. STAT. § 18-9-122(3) (classifying violation as a "petty offense"); *id.* § 18-1.3-503(1.5) (establishing penalty).

**The State Defendants admit that any person who violates section 18-9-122(3), C.R.S. commits a petty offense, and that the penalty for commission of a petty offense on or after March 1, 2022, is a fine of not more than three hundred dollars, imprisonment for not more than ten days in a county jail, or both.**

31. Violation of Section 18-9-122(3)'s ban also gives rise to civil liability for damages and injunctive relief. *See id.* §§ 18-9-122(6), 13-21-106.7.

**The State Defendants admit that a person who violates the provisions of section 18-9-122, C.R.S. is subject to civil liability. Specifically, "a person is entitled to recover damages and to obtain injunctive relief from any person who commits or incites others to commit the offense of preventing passage to or from a health-care facility or engaging in prohibited activity as engaged in a health-care facility as defined in section 18-9-122(2), C.R.S."**

32. Colorado defended the validity of Section 18-9-122(3) all the way to the Supreme Court, resulting in the decision in *Hill* upholding the law. Defendants continue to actively enforce Section 18-9-122(3).

**The State Defendants admit that the Defendants in *Hill v. Colorado*, 530 U.S. 703 (2000), defended section 18-9-122(3), C.R.S. up to and in the United States Supreme Court in that case. The State Defendants deny that the State Defendants are actively enforcing section 18-9-122(3), C.R.S., but admit that section 18-9-122(3) is a criminal prohibition under Colorado law.**

33. Section 18-9-122(3)'s restriction on oral communications outside health care facilities is content-based on its face. While Section 18-9-122(3) bars oral communications that

constitute "protest," "education," or "counseling," it does not bar any other type of oral communication. COLO. REV. STAT. § 18-9-122(3). Accordingly, the act unambiguously draws distinctions based on the message a speaker conveys, and enforcement authorities seeking to determine whether an individual's speech falls within the Act must examine the content of the message that is conveyed to determine whether a violation has occurred.

**The State Defendants deny that section 18-9-122(3), C.R.S. is a content-based restriction on oral communications. Instead, as the United States Supreme Court held in *Hill*, section 18-9-122(3) is content neutral. 530 U.S. at 725. The State Defendants deny any remaining allegations in Paragraph 33.**

34. Section 18-9-122(3) is also content-based because it defines regulated speech by its function or purpose. The provision only applies to a person who approaches within eight feet of another to speak with them *for a particular purpose*: "for the purpose of . . . engaging in oral protest, education, or counseling with such other person." *Id.* Approaching someone to speak for any other purpose is freely permitted.

**The State Defendants deny that section 18-9-122(3), C.R.S. is content-based. Instead, as the United States Supreme Court held in *Hill*, section 18-9-122(3) is content neutral. 530 U.S. at 725. The State Defendants deny any remaining allegations in Paragraph 34.**

35. Section 18-9-122(3)'s ban is also facially content-based because it applies only to speech outside of "health care facilities." That limitation to "protest, education, or counseling" that occurs only in specific locations is a content-based determination. *Id.*

**The State Defendants deny that section 18-9-122(3), C.R.S. is content-based. Instead, as the United States Supreme Court held in *Hill*, section 18-9-122(3) is content neutral. 530 U.S. at 725. The State Defendants deny any remaining allegations in Paragraph 35.**

36. Section 18-9-122(3)'s ban on approaching women outside of abortion clinics to counsel them is content-based not only on its face but also because it cannot be justified without reference to the content of the regulated speech.

**The State Defendants deny the allegations in Paragraph 36.**

37. As the Supreme Court has held, Section 18-9-122(3)'s purpose is to "protect listeners from unwanted communication." *Hill*, 530 U.S. at 716. And as the Court has also more recently made clear, when the government acts to limit the "undesirable effects that arise from the direct impact of speech on its audience" by, for example, restricting speech because it "cause[s] offense or ma[kes] listeners uncomfortable," that is "not . . . a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481 (internal quotation marks omitted).

**The State Defendants deny that the United States Supreme Court held that section 18-9-122(3)'s purpose is to "protect listeners from unwanted communication." The State Defendants admit that the quoted material in Paragraph 37 from *McCullen v. Coakley*, 573 U.S. 464, 481 (2014), is accurately quoted. Any remaining allegations in Paragraph 37 are legal contentions to which no response is required. To the extent a response is required, The State Defendants deny the remaining allegations in Paragraph 37.**

38. In addition to being content-based, Section 18-9-122(3) is also viewpoint-based.

**The State Defendants deny that section 18-9-122(3), C.R.S. is viewpoint-based.**

39. That, too, is evident from the face of the law. As the preamble in Section 18-9-122(1) openly proclaims, Colorado's restrictions were designed to restrict the "right to protest or counsel *against*" what the statute describes as "certain medical procedures." COLO. REV. STAT § 18-9-122(1) (emphasis added).

**The State Defendants admit that the quoted material in Paragraph 39 appears in section 18-9-122(1), C.R.S. The State Defendants deny that section 18-9-122(1), C.R.S. proclaims that section 18-9-122(3), C.R.S. is designed to restrict the right to protest or counsel against certain medical procedures, and deny any remaining allegations in Paragraph 39.**

40. The viewpoint-based nature of Section 18-9-122(3)'s restrictions is also evident from the historical background of the law. The legislative history of the law is overwhelmingly comprised of debate and testimony discussing pro-life political expression outside of abortion clinics: both by those who were critical of this pro-life expression (such as representatives of Planned Parenthood, abortion clinic employees, and pro-choice activists) and by those who defended it (such as pro-life activists and sidewalk counselors). *See* Joint Appendix at 58a–216a, *Hill v. Colorado*, No. 98-1856 (U.S. Nov. 10, 1999), 1999 WL 33612749.

**The State Defendants deny that section 18-9-122(3), C.R.S., imposes any viewpoint-based restrictions. The State Defendants admit that the legislative history of the law includes discussion of political expression outside of abortion clinics but deny any characterization of that discussion as overwhelming or otherwise. The State Defendants deny any remaining allegations in Paragraph 40.**

41. As the Supreme Court explained in *Hill*, Section 18-8-122(3)'s legislative history thus "makes it clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics." 530 U.S. at 715.

**The State Defendants admit that the quoted language in Paragraph 41 appears in the *Hill* opinion. The State Defendants deny that the quoted language includes the full context for the comment in *Hill*, which is: "First, [petitioners] accurately explain that the areas protected by the statute encompass all the public ways within 100 feet of every entrance to every health care facility everywhere in the State of Colorado. There is no disagreement on this point, even though the legislative history makes clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics." 530 U.S. at 715.**

42. There is no indication, in *Hill* or in the legislative record, that Section 18-8-122(3) was designed to curb *pro-choice* political expression.

**The State Defendants deny the allegations in Paragraph 42.**

43. Accordingly, "[t]he purpose and design of the statute—as everyone ought to know and as its own defenders urge in attempted justification—are to restrict speakers on one side of the debate: those who protest abortions." *Id.* at 768 (Kennedy, J., dissenting).

**The State Defendants deny the allegations in Paragraph 43.**

44. Section 18-8-122(3)'s content-based ban on approaching women outside of abortion clinics to counsel them is not narrowly tailored to serve any compelling governmental interest. Indeed, it is not even properly tailored to serve any significant or important governmental interest.

**The State Defendants deny the allegations in Paragraph 44.**

45. *Hill* holds that the core purpose of Section 18-8-122(3) is to protect "the unwilling listener's interest in avoiding unwanted communication" in quintessentially public spaces. *Id*. at 716 (majority opinion). That is not a legitimate governmental interest, let alone a compelling one. Indeed, "if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." *Id.* at 749 (Scalia, J., dissenting).

**The State Defendants deny that *Hill* holds that the core purpose of section 18-8-122(3), C.R.S., or section 18-9-122(3), C.R.S. assuming that is the statute Plaintiff intended to cite in Paragraph 45, is to protect the unwilling listener's interest in avoiding unwanted communication in quintessentially public spaces. The State Defendants deny any the remaining allegations in Paragraph 45.**

46. To the extent that Section 18-8-122(3) is justified instead as advancing the interests of promoting public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways, it is not narrowly tailored to further those interests because there are other available, far less intrusive means of doing so.

**The State Defendants deny the allegations in Paragraph 46.**

47. For instance, subsection 2 of Colorado's law—which Plaintiff does not challenge here—already makes it a crime if anyone "knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit from a health-care facility." COLO. REV. STAT § 18-9- 122(2).

**The State Defendants admit that a person commits a petty offense if such person knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit**

**from a health-care facility. The State Defendants admit that Plaintiff does not challenge section 18-9-122(2), C.R.S. The State Defendants deny any remaining allegations in Paragraph 47.**

48. Similarly, the federal Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") makes it a crime if anyone "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1).

**The State Defendants admit that under federal law it is a crime to, by force or threat of force or by physical obstruction, intentionally injure, intimidate or interfere with or attempt to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services. The State Defendants deny any remaining allegations in Paragraph 48.**

49. Likewise, a Denver municipal ordinance already makes it unlawful for any person to either (1) "[o]bstruct a highway, street, sidewalk . . . [or] building entrance . . . to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances," or (2) "[d]isobey a reasonable request or order to move . . . to prevent obstruction of a highway or passageway or to maintain public safety." DENVER CODE OF ORDINANCES § 38-86(1).

**The State Defendants admit that Denver Code of Ordinances § 38-86(1) makes it unlawful for any person to (1) knowingly obstruct a highway, street, sidewalk, or building entrance to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances; or (2) disobey a reasonable request or order to move issued by an individual the person knows, or reasonably should know, to be a peace officer, a firefighter, or a person with authority to control the use of the premises, to prevent obstruction of a highway or passageway or to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.**

## III. Answer to Denver's Restrictions on Speech Outside Abortion Clinics.

50. Section 18-9-122 leaves local jurisdictions with authority to "adopt[ ] a law for the control of access to health-care facilities that is no less restrictive than the provisions of this section." COLO. REV. STAT. § 18-9-122(5).

**The State Defendants admit that section 18-9-122(5), C.R.S. states that nothing in section 18-9-122, C.R.S. shall be construed to prohibit a statutory or home rule city or county or city and county from adopting a law for the control of access to health-care facilities that is no less restrictive than the provisions of section 18-9-122, C.R.S. The State Defendants deny that this provision applies to all local jurisdictions.**

51. Consistent with this authority, the City and County of Denver has adopted a municipal ordinance substantially identical to Section 18-9-122(3). DENVER CODE OF ORDINANCES § 38-114(b) provides:

> No person shall knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or

> counseling with such other person in the public way or sidewalk area within a radius of one hundred (100) feet from any entrance door to a health care facility.

DENVER CODE OF ORDINANCES § 38-114(b).

**The State Defendants admit that the Denver Code of Ordinances includes the quoted passage at section 38-114(b). The remaining allegations in Paragraph 51 are legal contentions to which no response is required. To the extent a response is required, The State Defendants deny the remaining allegations in Paragraph 51.**

52. Similar to its state-law counterpart, Denver's ordinance defines "[h]ealth care facility" as "[a]ny licensed or certified medical or health care facility within the City and County of Denver or any office or clinic within the City and County of Denver regularly used by any licensed health care provider to provide medical, nursing or health care to patients." *Id*. § 38-114(a).

**The State Defendants admit that Denver Code of Ordinances § 38-114(a) defines "health care facility" as "Any licensed or certified medical or health care facility within the City and County of Denver or any office or clinic within the City and County of Denver regularly used by any licensed health care provider to provide medical, nursing or health care to patients." The remaining allegations in Paragraph 52 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the remaining allegations in Paragraph 52.**

53. "Health-care facilities" include abortion clinics within the City and County of Denver.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 53, and therefore deny them.**

54. DENVER CODE OF ORDINANCES § 38-114(b)'s restriction on approaching people entering abortion clinics to offer them "a leaflet or handbill" or to "engag[e] in oral protest, education, or counseling" with them thus surgically targets the pro-life practice known as "sidewalk counseling," effectively banning it without first obtaining the person's affirmative consent. *Id*.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 54, and therefore deny them.**

55. The punishment for each violation of DENVER CODE OF ORDINANCES § 38-114(b)'s ban on approaching women outside of abortion clinics to counsel them is a fine of up to $999, jail time up to 300 days, or both. *See* DENVER CODE OF ORDINANCES § 1-13(b).

**The State Defendants admit that Denver Code of Ordinances § 38-114(b) does not provide for a fine or penalty, and that the general penalty section for a violation of the Denver Code of Ordinances indicates that a violator may, for each offense, be fined in a sum not more than $999 or jailed not to exceed 300 days, or both so fined and jailed. The State Defendants deny any remaining allegations in Paragraph 55.**

56. Defendants City and County of Denver, Tipper, and Thomas actively enforce DENVER CODE OF ORDINANCES § 38-114(b).

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 56 and therefore deny them.**

57. DENVER CODE OF ORDINANCES § 38-114(b)'s restriction on oral communications outside health care facilities is content-based on its face. While DENVER CODE OF ORDINANCES § 38-114(b) bars oral communications that constitute "protest,"

"education," or "counseling," it does not bar any other type of oral communication. *Id*. Accordingly, the Ordinance unambiguously draws distinctions based on the message a speaker conveys, and enforcement authorities seeking to determine whether an individual's speech falls within the Ordinance must examine the content of the message that is conveyed to determine whether a violation has occurred.

**The State Defendants deny the allegations in Paragraph 57.**

58. DENVER CODE OF ORDINANCES § 38-114(b) is also content-based because it defines regulated speech by its function or purpose. The provision only applies to a person who approaches within eight feet of another to speak with them *for a particular purpose*: "for the purpose of . . . engaging in oral protest, education, or counseling with such other person." *Id*. Approaching someone to speak for any other purpose is freely permitted.

**The State Defendants deny the allegations in Paragraph 58.**

59. DENVER CODE OF ORDINANCES § 38-114(b)'s ban is also facially content-based because it applies only to speech outside of a "medical or health care facility." *Id*. § 38-114(a). That limitation to "protest, education, or counseling" that occurs only in specific locations is a content-based determination. *Id*. § 38-114(b)

**The State Defendants deny the allegations in Paragraph 59.**

60. DENVER CODE OF ORDINANCES § 38-114(b)'s ban on approaching women outside of abortion clinics to counsel them is content-based not only on its face but also because it cannot be justified without reference to the content of the regulated speech.

**The State Defendants deny the allegations in Paragraph 60.**

61. In *Hill*, the Supreme Court held that COLO. REV. STAT. § 18-9-122(3)'s purpose is to "protect listeners from unwanted communication." *Hill*, 530 U.S. at 716. And in an amicus brief filed before the Supreme Court in *Hill*, the City and County of Denver represented that its own ordinance (the predecessor of DENVER CODE OF ORDINANCES § 38-114(b)) was "similar in content, and purpose, to the statute that is the subject of this litigation." Amici Br. of the City of Boulder & the City & Cnty. of Denver at 1, *Hill v. Colorado*, No. 98-1856 (U.S. Dec. 13, 1999), 1999 WL 1186251. Denver went on to explain, consistent with the Supreme Court's ultimate holding, that this purpose was to protect against the "substantial negative impact" that "protest activity" outside of abortion clinics purportedly has "on patients that encounter these demonstrations." *Id.* at 20. But protecting against the "undesirable effects that arise from the direct impact of speech on its audience" is "not . . . a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481 (internal quotation marks omitted).

**The State Defendants deny that the United States Supreme Court held that section 18-9-122(3)'s purpose is to "protect listeners from unwanted communication." The State Defendants admit that the City and County of Denver, along with the City of Boulder, filed an amici brief in *Hill*, and that the quoted material in Paragraph 61 purportedly from that brief appears in that brief, but deny the characterization of that quoted material. The State Defendants admit that the quoted material in Paragraph 61 from *McCullen v. Coakley*, 573 U.S. 464, 481 (2014), is accurately quoted. The State Defendants deny any remaining allegations in Paragraph 61.**

62. The City and County of Denver's amicus brief in *Hill* further makes clear that DENVER CODE OF ORDINANCES § 38-114(b) is not only content-based, but also viewpoint-

based. In explaining the "similar . . . purpose" of COLO. REV. STAT. § 18-9-122(3), Denver discussed at length the "substantial negative impact of protest activity on patients attempting to obtain healthcare services," as purportedly shown by the legislative testimony of a nurse at one abortion clinic, and a volunteer at another, describing the pro-life political speech that had taken place outside those clinics. Amici Br. of the City of Boulder & the City & Cnty. of Denver, *supra*, at 1, 4, 16.

**The State Defendants admit that the quoted material purportedly from the Amici Brief of the City of Boulder and the City & County of Denver appears in that brief, but denies that any characterization of that material is accurate. The State Defendants deny that the cited brief makes clear that Denver Code of Ordinances § 38-114(b) is content-based and viewpoint-based. The State Defendants deny any remaining allegations in Paragraph 62.**

63. There is no indication that DENVER CODE OF ORDINANCES § 38-114(b) was designed to curb *pro-choice* political expression.

**The State Defendants deny the allegations in Paragraph 63.**

64. DENVER CODE OF ORDINANCES § 38-114(b)'s content-based ban on approaching women outside of abortion clinics to counsel them is not narrowly tailored to serve any compelling governmental interest. Indeed, it is not even properly tailored to serve any significant or important governmental interest.

**The State Defendants deny the allegations in Paragraph 64.**

65. To the extent that DENVER CODE OF ORDINANCES § 38-114(b)'s purpose, like Section 18-8-122(3)'s, is to protect "the unwilling listener's interest in avoiding unwanted

communication" in quintessentially public spaces, *Hill* 530 U.S. at 716, that is not a legitimate governmental interest, let alone a compelling one. Indeed, "if protecting people from unwelcome communications . . . is a compelling state interest, the First Amendment is a dead letter." *Id.* at 748–49 (Scalia, J., dissenting).

**The State Defendants deny the allegations in Paragraph 65.**

66. To the extent that DENVER CODE OF ORDINANCES § 38-114(b) is justified instead as advancing the interests of promoting public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways, it is not narrowly tailored to further those interests because there are other available, far less intrusive means of doing so.

**The State Defendants deny the allegations in Paragraph 66.**

67. For instance, COLO. REV. STAT § 18-9-122(2)—which Plaintiff does not challenge here—already makes it a crime if anyone "knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit from a health-care facility." COLO. REV. STAT § 18-9- 122(2).

**The State Defendants admit that a person commits a petty offense if such person knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit from a health-care facility. The State Defendants admit that Plaintiff does not challenge section 18-9-122(2), C.R.S. The State Defendants deny any remaining allegations in Paragraph 67.**

68. Similarly, the federal Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") makes it a crime if anyone "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere

with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1).

**The State Defendants admit that under federal law it is a crime to, by force or threat of force or by physical obstruction, intentionally injure, intimidate or interfere with or attempt to injure, intimidate or interfere with any person because that person is or has been, or in order to intimate such person or any other person or any class of persons from, obtaining or providing reproductive health services. The State Defendants deny any remaining allegations in Paragraph 68.**

69. Likewise, another Denver municipal ordinance already makes it unlawful for any person to either (1) "[o]bstruct a highway, street, sidewalk . . . [or] building entrance . . . to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances," or (2) "[d]isobey a reasonable request or order to move . . . to prevent obstruction of a highway or passageway or to maintain public safety." DENVER CODE OF ORDINANCES § 38-86(1).

**The State Defendants admit that Denver Code of Ordinances § 38-86(1) makes it unlawful for any person to (1) knowingly obstruct a highway, street, sidewalk, or building entrance to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances; or (2) disobey a reasonable request or order to move issued by an individual the person knows, or reasonably should know, to be a peace officer, a firefighter, or a person with authority to control the use of the premises, to prevent obstruction of a highway or passageway or to maintain public safety**

**by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard. Defendants deny any remaining allegations in Paragraph 69.**

**IV. Answer to The Bans' Impact on Ms. Faustin's Speech.**

70. COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) impose draconian burdens on the speech activity known as "sidewalk counseling" by preventing people from approaching women entering abortion clinics and offering them guidance, counsel, and information at a normal conversational distance.

**The State Defendants deny the allegations in Paragraph 70.**

71. COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) apply "within a radius of one hundred feet from any entrance door" to an abortion clinic, encompassing the area outside of a clinic where Ms. Faustin can meaningfully identify and talk with women who are entering the facility to obtain an abortion. COLO. REV. STAT § 18-9-122(3).

**The State Defendants admit that the challenged statute and ordinance apply within a radius of one hundred feet from any entrance door to any health-care facility. The State Defendants are without sufficient information to form a belief as to the remaining allegations in Paragraph 71, and therefore deny them.**

72. COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) thus require Ms. Faustin to remain eight feet away from the women she wishes to talk with and attempt to persuade. This mandatory eight-foot remove is well outside of the distance in which normal, private conversations can occur. To speak with women while still

complying with COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), therefore, usually Ms. Faustin is effectively forced to shout.

**The State Defendants deny that the challenged statute and ordinance require Plaintiff to remain eight feet away from all women she wishes to talk with and attempt to persuade. The State Defendants deny any remaining allegations in Paragraph 72.**

73. That makes it impossible for Ms. Faustin to engage in the type of speech that she believes most effective. "[T]he 'counseling' and 'educating' likely to take place outside a health care facility cannot be done at a distance and at a high-decibel level." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting)). Ms. Faustin "hopes to forge, in the last moments before another of her sex is to have an abortion, a bond of concern and intimacy that might enable her to persuade the woman to change her mind and heart," and she simply cannot do this by shouting from eight feet away. *Id.* Defendants' eight-foot buffer zone thus forces Ms. Faustin "to rais[e] her voice at patients from outside the zone—a mode of communication sharply at odds with the compassionate message she wishes to convey." *McCullen*, 573 U.S. at 487.

**The State Defendants are without sufficient information to form a belief as to Plaintiffs' hopes, and therefore denies allegations of such in Paragraph 73. The State Defendants deny any remaining allegations in Paragraph 73.**

74. COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) hold out the possibility that Ms. Faustin could approach a woman entering an abortion clinic by obtaining her consent, but that affirmative consent requirement is itself a significant burden on Plaintiff's speech. A request for consent to approach shouted from eight feet away is easily ignored by women who are hurriedly entering a clinic. "[I]ndeed, by the time

[Ms. Faustin] requested it they would likely have passed by." *Hill*, 530 U.S. at 758 (Scalia, J., dissenting).

**The State Defendants admit that the challenged statute and ordinance permit a person to knowingly approach another person within eight feet of such person if such person consents to the approach. The State Defendants deny the remaining allegations in Paragraph 74.**

75. More fundamentally, requiring Ms. Faustin to begin her conversation with a woman entering an abortion clinic by shouting a request for consent from eight feet away itself forces her to alter her intended message in a way that is antithetical to her "ability to initiate the close, personal conversations" she wishes to have with these women. *McCullen*, 573 U.S. at 487.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 75, and therefore deny them.**

76. The key "virtue" of "public streets and sidewalks" is that "they remain one of the few places where a speaker can be confident that he is not simply preaching to the choir," but instead is able to confront listeners "with an uncomfortable message" that they "might otherwise tune out." *Id.* at 476. Defendants' requirement that Ms. Faustin obtain affirmative consent before speaking to women in the streets and sidewalks outside abortion clinics eliminates this crucial feature of the speech that ordinarily can take place in these public fora.

**The State Defendants deny the allegations in Paragraph 76.**

77. COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) also significantly hinder Ms. Faustin's ability to tender leaflets or pamphlets to

women entering abortion clinics providing information about the nature of their unborn children, the procedure, and other available alternatives and resources.

**The State Defendants deny the allegations in Paragraph 77.**

78. "To solicit by pamphlet is to tender it to the person." *Hill*, 530 U.S. at 789 (Kennedy, J., dissenting). But COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) forbid Ms. Faustin from approaching women entering clinics "in time to place literature near their hands—the most effective means of getting the patients to accept it." *McCullen*, 573 U.S. at 488. Requiring Plaintiff to obtain affirmative consent to proffer a leaflet, at the reach of eight feet or more—or else to "wait for passersby voluntarily to approach an outstretched hand"—renders this form of communication "utterly ineffectual." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting).

**The State Defendants deny the allegations in Paragraph 78.**

79. In some locations, COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b)'s restriction on Ms. Faustin's ability to speak with women entering abortion clinics is even more onerous. For instance, most women obtaining abortions at the Healthy Futures Clinic at 1634 N. Downing St., Denver, CO 80218 arrive by car and park in the clinic's parking lot. By banning Ms. Faustin from approaching these women's vehicles as they cross the sidewalk and drive towards the clinic's parking lot, COLO. REV. STAT § 18-9-122(3) prevents her from speaking to these women *at all*, except by shouting at them from outside the parking lot as they get out of their vehicles and walk to the entrance.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 79, and therefore deny them.**

80. COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) have prevented Ms. Faustin's speech on numerous occasions.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 80, and therefore deny them.**

81. In multiple instances in the past few months, for example, Ms. Faustin has called out to a young woman entering the Healthy Futures clinic—both at its previous location in Englewood and its current location in Denver—from the required distance of eight feet or more, and asked if she could give her some information on the nature of abortion and possible alternatives. The young women declined to give consent, and Ms. Faustin was prevented by COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) from engaging with them further.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 81, and therefore deny them.**

82. If it were not for COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), Ms. Faustin would have begun her interaction with these young women in a more personal and conversational manner and have attempted "to forge . . . a bond of concern and intimacy that might enable her to persuade the woman to change her mind and heart." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting). The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her forced her to refrain from engaging in that speech.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 82, and therefore deny them.**

83. If it were not for COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), Ms. Faustin would also have tendered written information concerning abortion and its alternatives in the far more effective manner of "walk[ing] a few steps toward" the young woman, "extending [her] arm and making it *as easy as possible*" for her "to simply accept the offering." *Id.* at 758. The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her forced Plaintiff to refrain from tendering written information in that way.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 83, and therefore deny them.**

84. Similarly, on another occasion in the past few months, COLO. REV. STAT § 18-9- 122(3) and DENVER CODE OF ORDINANCES § 38-114(b) restricted Ms. Faustin's pro-life speech outside of the Mile High OBGYN clinic, at 4545 E 9th Ave #502, Denver, CO 80220. When Ms. Faustin was speaking outside of the Mile High OBGYN clinic, COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) limited her to calling out to women entering the clinic from a distance of over eight feet away and asking if they would give her permission to approach them to speak with them and give them written information about the nature of their unborn children, the procedure, and other available alternatives and resources.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 84, and therefore deny them.**

85. If it were not for COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), Ms. Faustin would have begun her interactions with the young women entering the Mile High OBGYN clinic in a more personal and conversational

manner and would have attempted "to forge . . . a bond of concern and intimacy that might enable her to persuade the woman to change her mind and heart." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting). The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her forced her to refrain from engaging in that speech.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 85, and therefore deny them.**

86. If it were not for COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b), Ms. Faustin would also have tendered written information concerning abortion and its alternatives in the far more effective manner of "walk[ing] a few steps toward" each young woman entering the Mile High OBGYN clinic, "extending [her] arm and making it *as easy as possible*" for her "to simply accept the offering." *Id.* at 758. The threat that Defendants would enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) against her forced Plaintiff to refrain from tendering written information in that way.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 86, and therefore deny them.**

87. Ms. Faustin believes passionately in the importance of speaking with young women coming into abortion clinics and presenting them with more information and alternatives, and she will continue to peacefully and compassionately speak outside of abortion clinics in the Denver area in the limited ways that COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCE § 38-114(b) allow.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 87, and therefore deny them.**

88. But if it were not for Defendants' enforcement of those laws, Ms. Faustin would imminently and repeatedly speak with young women outside of the Healthy Futures clinic, the Mile High OBGYN clinic, and other abortion clinics in the Denver area, in the far more effective manner that is banned by those provisions: by approaching them within a normal conversational distance under eight feet, presenting them with written information about the nature of their unborn children, the procedure, and other available alternatives and resources, and attempting to engage them in a peaceful and compassionate conversation about these matters in an effort to persuade them to pursue an alternative to abortion.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 88, and therefore deny them.**

89. Ms. Faustin continues to refrain from this speech only because she credibly fears Defendants will enforce COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38- 114(b) against her.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 89, and therefore deny them.**

90. Defendants' actions, taken under color of state law, have denied Ms. Faustin's rights and privileges secured under the U.S. Constitution's First Amendment as applied to the States through the Fourteenth Amendment. Because of Defendants' actions, Ms. Faustin has suffered, and continues to suffer, irreparable harm.

**The State Defendants deny the allegations in Paragraph 90.**

## ANSWER TO COUNT ONE – FREEDOM OF SPEECH

**42 U.S.C. § 1983 Action Challenging Defendants' Enforcement of COLO. REV. STAT. § 18-9-122(3) under U.S. CONST. amends. I and XIV (Against Defendants Polis, Weiser, McCann, and Thomas)**

91. Plaintiff hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

**The State Defendants hereby reallege and incorporate each of their responses to the foregoing allegations as if set forth herein.**

92. Public sidewalks and streets outside of abortion clinics in Colorado are quintessential public forums for free speech.

**The allegations in Paragraph 92 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 92.**

93. Distributing leaflets discussing abortion, its risks and implications, and its alternatives is core expression protected by the Free Speech Clause of the First Amendment.

**The allegations in Paragraph 93 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 93.**

94. Orally discussing abortion, its risks and implications, and its alternatives with persons entering an abortion clinic is core expression protected by the Free Speech Clause of the First Amendment.

**The allegations in Paragraph 94 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 94.**

95. The Fourteenth Amendment to the U.S. Constitution incorporates the First Amendment against the State of Colorado.

**The State Defendants admit the allegations in Paragraph 95.**

96. COLO. REV. STAT. § 18-9-122(3) burdens and impedes Plaintiff's ability to distribute leaflets discussing abortion, its risks and implications, and its alternatives to women entering abortion clinics in Colorado.

**The State Defendants deny the allegations in Paragraph 96.**

97. COLO. REV. STAT. § 18-9-122(3) burdens and impedes Plaintiff's ability to speak orally about abortion, its risks and implications, and its alternatives with women entering abortion clinics in Colorado.

**The State Defendants deny the allegations in Paragraph 97.**

98. COLO. REV. STAT. § 18-9-122(3)'s burden on speech is content-based, both because it draws content-based distinctions on its face and because it cannot be justified without reference to the content of the regulated speech.

**The State Defendants deny the allegations in Paragraph 98.**

99. COLO. REV. STAT. § 18-9-122(3)'s burden on speech is also viewpoint-based, both because it targets speech by one side of the abortion debate on its face and because its design and effect is to restrict speech on one side of the abortion debate.

**The State Defendants deny the allegations in Paragraph 99.**

100. COLO. REV. STAT. § 18-9-122(3)'s burden on speech is not narrowly tailored to serve any compelling, significant, or important government interest.

**The State Defendants deny the allegations in Paragraph 100.**

101. Accordingly, COLO. REV. STAT. § 18-9-122(3) is unconstitutional under the First Amendment's Free Speech Clause, as incorporated against the State of Colorado under the Fourteenth Amendment, both on its face and as applied to Plaintiff Faustin.

**The State Defendants deny the allegations in Paragraph 101.**

**ANSWER TO COUNT TWO – FREEDOM OF SPEECH**

**42 U.S.C. § 1983 Action Challenging Defendants' Enforcement of DENVER CODE OF ORDINANCES § 38-114(b) under U.S. CONST. amends. I and XIV (Against Defendants City and County of Denver, Tipper, and Thomas)**

102. Plaintiff hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

**The State Defendants hereby reallege and incorporate each of their responses to the foregoing allegations as if set forth herein.**

103. Public sidewalks and streets outside of abortion clinics in the City and County of Denver are quintessential public forums for free speech.

**The allegations in Paragraph 103 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 103.**

104. Distributing leaflets discussing abortion, its risks and implications, and its alternatives is core expression protected by the Free Speech Clause of the First Amendment.

**The allegations in Paragraph 104 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 104.**

105. Orally discussing abortion, its risks and implications, and its alternatives with persons entering an abortion clinic is core expression protected by the Free Speech Clause of the First Amendment.

**The allegations in Paragraph 105 are legal contentions to which no response is required. To the extent a response is required, the State Defendants deny the allegations in Paragraph 105.**

106. The Fourteenth Amendment to the U.S. Constitution incorporates the First Amendment against the City and County of Denver.

**The State Defendants admit the allegations in Paragraph 106.**

107. DENVER CODE OF ORDINANCES § 38-114(b) burdens and impedes Plaintiff's ability to distribute leaflets discussing abortion, its risks and implications, and its alternatives to women entering abortion clinics in Denver.

**The State Defendants deny the allegations in Paragraph 107.**

108. DENVER CODE OF ORDINANCES § 38-114(b) burdens and impedes Plaintiff's ability to speak orally about abortion, its risks and implications, and its alternatives with women entering abortion clinics in Denver.

**The State Defendants deny the allegations in Paragraph 108.**

109. Plaintiff has, on at least one occasion within the last two years, been prevented from distributing leaflets discussing abortion, its risks and implications, and its alternatives to

women entering abortion clinics in Denver, by fear that DENVER CODE OF ORDINANCES § 38-114(b) would be enforced against her.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 109, and therefore deny them.**

110. Plaintiff has, on at least one occasion within the last two years, been prevented from speaking orally about abortion, its risks and implications, and its alternatives with women entering abortion clinics in Denver, by fear that DENVER CODE OF ORDINANCES § 38-114(b) would be enforced against her.

**The State Defendants are without sufficient information to form a belief as to the allegations in Paragraph 110, and therefore deny them.**

111. DENVER CODE OF ORDINANCES § 38-114(b)'s burden on speech is content-based, both because it draws content-based distinctions on its face and because it cannot be justified without reference to the content of the regulated speech.

**The State Defendants deny the allegations in Paragraph 111.**

112. DENVER CODE OF ORDINANCES § 38-114(b)'s burden on speech is also viewpoint- based, because its design and effect is to restrict speech on one side of the abortion debate.

**The State Defendants deny the allegations in Paragraph 112.**

113. DENVER CODE OF ORDINANCES § 38-114(b)'s burden on speech is not narrowly tailored to serve any compelling, significant, or important government interest.

**The State Defendants deny the allegations in Paragraph 113.**

114. Accordingly, DENVER CODE OF ORDINANCES § 38-114(b) is unconstitutional under the First Amendment's Free Speech Clause, as incorporated against the City and County of Denver under the Fourteenth Amendment, both on its face and as applied to Plaintiff Faustin.

**The State Defendants deny the allegations in Paragraph 114.**

**ANSWER TO JURY DEMAND**

115. Plaintiff demands trial by jury on all issues so triable.

**The State Defendants demand trial by jury on all issues so triable.**

**PRAYER FOR RELIEF**

116. WHEREFORE, Plaintiff prays for an order and judgment:

a. Declaring that Colorado's restriction on speech outside of health-care facilities, as set forth in COLO. REV. STAT. § 18-9-122(3), violates the First and Fourteenth Amendments and is thus devoid of any legal force or effect;

b. Declaring that the City and County of Denver's restriction on speech outside of health-care facilities, as set forth in DENVER CODE OF ORDINANCES § 38-114(b), violates the First and Fourteenth Amendments and is thus devoid of any legal force or effect;

c. Enjoining Defendants and their employees and agents from enforcing COLO. REV. STAT. § 18-9-122(3) in any manner, including by arresting or prosecuting persons for engaging in the activity proscribed by that provision;

d. Enjoining Defendants and their employees and agents from enforcing DENVER CODE OF ORDINANCES § 38-114(b) in any manner, including by

arresting or prosecuting persons for engaging in the activity proscribed by that provision;

e. Awarding Plaintiff nominal damages, pursuant to Count Two only, to compensate her for the harm suffered as a result of the City and County of Denver's deprivation of her constitutional rights;

f. Awarding Plaintiff, against Defendants jointly and severally, her reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

g. Granting such other and further relief as this Court deems just and proper.

**The State Defendants deny that Plaintiff is entitled to any of the relief she requests.**

**AFFIRMATIVE DEFENSES**

The State Defendants submit the following affirmative defenses for which they do not concede that they have the burden of proof or persuasion:

A. Plaintiff lacks Article III standing to bring this action;

B. Laches;

The State Defendants reserve the right to assert additional affirmative defenses as discovery progresses in this case and the facts become known.

Dated: November 7, 2023

PHILIP J. WEISER
Attorney General

/s Peter G. Baumann

*LeeAnn Morrill*, First Assistant Attorney General
*Emily Burke Buckley*, Senior Assistant Attorney General
*Peter G. Baumann*, Senior Assistant Attorney General
*Michael D. McMaster*, Assistant Solicitor General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349
Email: leeann.morrill@coag.gov; emily.buckley@coag.gov; peter.baumann@coag.gov; michael.mcmaster@coag.gov
*Attorneys for Defendants Polis and Weiser in their official capacities.*