IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01376-SKC-NRN

WENDY FAUSTIN

    Plaintiff,

v.

JARED S. POLIS, in his official capacity as Governor of Colorado;
PHILIP J. WEISER, in his official capacity as Colorado Attorney General;
CITY AND COUNTY OF DENVER; BETH MCCANN, in her official capacity as District Attorney for the 2nd Judicial District; KERRY C. TIPPER, in her official capacity as City Attorney of Denver; *and* RON THOMAS, in his official capacity as Chief of the Denver Police Department,

    Defendants.

---

## DEFENDANTS CITY AND COUNTY OF DENVER, RON THOMAS, AND KERRY C. TIPPER'S MOTION FOR SUMMARY JUDGMENT

---

Defendants City and County of Denver, Kerry C. Tipper, and Ron Thomas ("Denver Defendants"), under Federal Rule of Civil Procedure 56, seek summary judgment on Plaintiff Wendy Faustin's claim against them. Counsel for Denver Defendants conferred with Plaintiff's counsel by email on February 19, 21, 26, and over videoconference on February 24. The Motion is opposed.

### ARTIFICIAL INTELLIGENCE CERTIFICATION

Undersigned did not use artificial intelligence to draft any part of this filing.

## INTRODUCTION

Plaintiff's mission is to dissuade individuals from seeking abortions the moment she sees them walk toward a clinic's door. She believes Denver Ordinance § 38-114(b) ("the Ordinance") interferes with her mission. The Ordinance prevents people from approaching others within eight feet to distribute leaflets, handbills, display signs, protest, educate, or counsel without consent. According to Plaintiff, the Ordinance runs afoul of the First and Fourteenth Amendments because it is content based, viewpoint based, unconstitutional on its face, unconstitutional as applied to her, and doesn't pass muster under strict or intermediate scrutiny.

But Plaintiff has a problem: 25 years ago, the Supreme Court examined a nearly identical statute (one that the Ordinance mirrors), considered the exact arguments Plaintiff raises here, and rejected them. The Court in *Hill v. Colorado* established the restriction is content neutral and withstands intermediate scrutiny. 530 U.S. 703, 725, 730 (2000). Plaintiff readily acknowledges this and admits her goal is for the Supreme Court to grant certiorari and overturn *Hill*. (Doc. 69 ¶ 6). Consequently, this Court's lift is a light one. It should recognize *Hill* precludes Plaintiff's claim and enter judgment for Denver Defendants.

## LEGAL STANDARD

"[S]ummary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Patel v. Hall*, 849

2

F.3d 970, 978 (10th Cir. 2017) (quotations omitted); Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of any genuine issue of material fact and that they are entitled to judgment as a matter of law. *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000). This burden may be met by producing affirmative evidence negating an essential element of the nonmovant's claim, or the movant may show the nonmovant lacks evidence to carry its burden of persuasion at trial. *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008); *Sigmon*, 234 F.3d at 1125. If the moving party meets this burden, the nonmovant must present specific facts showing a genuine issue for trial, which must be supported by evidence. *Griffitts & Coder Custom Chopping, LLC v. CNH Indus. Am. LLC*, 438 F. Supp. 3d 1206, 1224 (D. Kan. 2020).

## ARGUMENT

*Hill* bars Plaintiff's claims. The Court, therefore, need not engage in further analysis. Nonetheless, Denver Defendants expand their argument to explain why the Ordinance is a content-neutral time, place, and manner restriction, valid on its face and as applied to Plaintiff, and viewpoint neutral. All are discussed in turn.

### I.  *Hill* Proscribes Plaintiff's Claims.

In *Hill v. Colorado,* petitioners did what Plaintiff does here. They challenged Colorado Statute § 18-9-122(3) as facially unconstitutional, unconstitutional as applied to them, content based, and viewpoint based. 530 U.S. 703, 723–25 (2000).

Case No. 1:23-cv-01376-SKC-NRN   Document 102   filed 02/27/25   USDC Colorado
  pg 4 of 17
test

Section 18-9-122(3) is substantively identical to the Ordinance,[1] and the Supreme Court rejected each of petitioners' arguments. It found the statute content and viewpoint neutral, reasonable, and narrowly tailored to significant government interests. *Hill*, 530 U.S. at 725, 729–30. The Court's holding, therefore, is dispositive and precludes Plaintiff's claim.[2] *See id.*

In any event, because the Supreme Court has not overturned *Hill*, it remains controlling law, especially when the issues here and in *Hill* are identical. Thus, the Court's analysis should end there. Even so, Denver Defendants provide additional argument below to illustrate the absence of any plausible violation.

---

[1] Colo. Rev. Stat. § 18-9-122(3) states:

> No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility. Any person who violates this subsection (3) commits a petty offense.

[2] Coincidentally, in two cases with identical issues to those here, the plaintiffs challenged *Hill*, lost at every level, and petitioned the Supreme Court to grant certiorari, which the Court denied the same week Denver Defendants filed this motion: *Turco v. City of Englewood*, No. 23-1189, 2025 WL 581834 (2025) and *Coalition Life v. City of Carbondale*, No. 24–57, 604 U. S. ____ (2025). Denying certiorari is a far cry from overturning *Hill*.

## II.  There Is No Evidence to Suggest Defendant Tipper or Thomas Have Enforced the Ordinance for Speech About Abortion.

Government employees can only be liable for a constitutional violation in which they personally participated—either by directly causing it or setting in motion "a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [their] constitutional rights." *Snell v. Tunnell,* 920 F.2d 673, 700 (10th Cir. 1990) (quotation omitted); *Schneider v. City of Grand Junction,* 717 F.3d 760, 768 (10th Cir. 2013). In other words, a plaintiff must show that each defendant "personally participated in the alleged constitutional violation." *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018).

Here, there is no evidence Tipper or Thomas personally participated in Plaintiff's alleged constitutional violations. In fact, Denver's arrests and citations under the Ordinance are tied to conduct like harassment and threatening behavior. SUMF ¶ 5. Not once has someone been arrested, cited, or prosecuted because of their abortion-related speech. *See id.* Aside from the case caption, Thomas and Tipper's only connections to this case are three underwhelming allegations saying they are responsible for actively enforcing the Ordinance. (*See* Doc. 69 ¶¶ 15, 16, 56). But there isn't a shred of evidence showing that they have ever enforced the Ordinance. SUMF ¶ 5. Consequently, they did not personally participate in any constitutional violation and are entitled to judgment. *Snell,* 920 F.2d at 700; *Vasquez,* 882 F.3d at 1275.

5

### III. The Ordinance Is a Content-Neutral Restriction That Is Valid on Its Face and as Applied to Plaintiff.

The Ordinance is content neutral on its face because it does not draw distinctions based on the speaker's message and its applications are lawful. It is also a valid time, place, and manner restriction that serves significant government interests: protecting a person's freedom to seek pregnancy-related services, protecting the free flow of traffic, and ensuring public safety and order. Further, the restriction is narrowly tailored to serve those interests because it does not burden substantially more speech than necessary to achieve its goals. Finally, the Ordinance leaves open ample alternative channels of communication and is valid as applied to Plaintiff.

#### A. The Ordinance is facially content neutral.

Plaintiff asserts the Ordinance is facially invalid because it is a content-based restriction that does not meet strict scrutiny. (Doc. 69 ¶¶ 64, 111). She is mistaken.

The Supreme Court has made facial challenges "hard to win." *Moody v. NetChoice*, 603 U.S. 707, 723 (2024). In the First Amendment context, "[t]he question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"[3] *Id*.

---

[3] This standard long applied solely to overbroad facial challenges under the First Amendment. *Moody v. NetChoice*, 603 U.S. at 778 n.14 (2024) (Alito, J., concurring); *United States v. Stevens*, 559 U.S. 460, 473 (2010). But in *Moody*, the Court seemed to extend it to all First Amendment facial challenges. *See Moody*, 603 U.S. at 723. Accordingly, Denver Defendants apply it here.

6

(quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). Thus, "even a law with 'a plainly legitimate sweep' may be struck down in its entirety. But that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723–24.

Courts must also determine if the law suppresses speech because of its message (i.e., content based). *TikTok Inc. v. Garland*, 604 U.S.——, 145 S. Ct. 57, 67 (2025). "First, a law is content based on its face if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *Id.* (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). "Second, a facially content-neutral law is nonetheless treated as a content-based regulation of speech if it 'cannot be justified without reference to the content of the regulated speech or was 'adopted by the government 'because of disagreement with the message the speech conveys.'" *Id.* (quoting *Reed*, 576 U.S. at 164). If the law falls under either of those two categories, it is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. That standard is strict scrutiny. *See id.*

If, on the other hand, the law doesn't target speech based on its message, it is content neutral and subject to intermediate scrutiny. *See TikTok*, 45 S. Ct. at 67. Under that standard, courts will uphold the law provided "it advances important governmental interests unrelated to the suppression of free speech and does not

7

burden substantially more speech than necessary to further those interests." *Turner Broad. Sys, Inc. v. FCC*, 520 U.S. 180, 189 (1997) (*Turner II* ).

Here, the Ordinance is constitutional on its face. It does not suppress speech based on its message, so it is content neutral and subject to intermediate scrutiny. *TikTok*, 145 S. Ct. at 67. Its unconstitutional applications also do not substantially outweigh its constitutional applications. *See Moody*, 603 U.S. at 723.

The Ordinance is content neutral because it bans all leaflets and signs regardless of message and treats individuals protesting, educating, or counseling about abortion the same as it would treat people protesting, educating, or counseling about animal rights, immigration policies, or unions. *See* SUMF ¶ 1. It also covers all health-care facilities, not just those that offer abortion services. *Id.* In fact, Denver has only cited people for violating the Ordinance in instances completely unrelated to abortion or pregnancy-related care. *See* SUMF ¶ 5 (showing arrests under the Ordinance have been limited to threats to injure, disturbing the peace, threats to a person or property, harassment, and violating of a court order).

As to its applications, from any angle, the Ordinance's sweep is legitimate. Plaintiff's belief that the restriction has a greater incidental effect on her speech (anti-abortion) than others, does not make the Ordinance content based. *McCullen v. Coakley*, 573 U.S. 464, 480 (2014) ("[A] a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics."). In short, because the Ordinance applies equally to all speech and does not

8

have a significant number of unconstitutional applications—if any—it is lawful on its face, content based, and subject to intermediate scrutiny.

### B. The Ordinance survives intermediate scrutiny because it serves significant government interests, is narrowly tailored to those interests, and leaves open alternative channels of communication.

The Ordinance applies to sidewalks. SUMF ¶ 1. Since sidewalks are a traditional public form, this adds another layer to the analysis. Content-neutral restrictions that cover traditional public forums are lawful if they "(a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016) (citing *Doe v. City of Albuquerque*, 667 F.3d 1111, 1130–31 (10th Cir. 2012)). All three requirements are satisfied.

#### 1. *The regulation serves significant government interests.*

The Supreme Court has consistently held that governments have a multitude of significant interests in establishing regulations outside abortion facilities. *McCullen v. Coakley*, 573 U.S. 464, 486–87 (2014); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 754 (1994). Those interests include allowing patient access to health care, protecting a person's freedom to seek pregnancy-related services, the free flow of traffic on sidewalks and streets, ensuring public safety and order, protecting property rights, and residential privacy rights. *McCullen*, 573 U.S. at 486–87; *Madsen*, 512 U.S. at 754 (1994).

9

Denver cannot achieve those interests without the Ordinance. People seeking abortion care and health care in general will suffer without laws like the Ordinance. SUMF ¶ 26 ("The presence of barriers to abortion access, including protest activity at abortion clinics . . . can prevent or delay many pregnant people from obtaining abortions."); SUMF ¶¶ 27, 28. Antiabortion activity in areas without restrictions has limited clinician availability, which forces patients to travel greater distances to seek necessary care and, thereby, suffer adverse health impacts. SUMF ¶ 27. These health impacts include unwanted pregnancy and childbirth, further placing greater financial strains on women and families. *Id.*

Antiabortion demonstrators, sometimes characterized by extreme acts of manipulation and hostility, can traumatize those seeking care. For instance, some demonstrators have worn lab coats, gotten close to patients and asked for their names, then proceeded to describe the mental and physical anguish patients will suffer if they have an abortion. SUMF ¶ 6. Others have tricked patients into going to "crisis" pregnancy centers instead of their intended health care facilities. *Id.* Unbeknownst to its patients, crisis centers do not offer health care services; rather, they are described as "anti-abortion spaces often masquerading as abortion providers." SUMF ¶ 7. As a result, patients have experienced "an atmosphere of fear and stigma around receiving abortion care," SUMF ¶ 8, leading to feelings of shame and guilt. SUMF ¶ 9.

These feelings often cause patients to suffer depression, which can last even two years after an abortion. SUMF ¶ 6. Without ordinances like Denver's, antiabortion demonstrators could prevent—or at least impede and chill—access to pregnancy-related services and general health care, which directly undercuts the government's significant interests. *McCullen*, 573 U.S. at 486–87.

Managing foot and vehicle traffic is another significant interest. In cities without distance requirements, some antiabortion demonstrators stand in the street to block traffic to share their beliefs. SUMF ¶ 10. The Ordinance helps ensure Denver's sidewalks and roads are safe, orderly, and uncongested. *Madsen*, 512 U.S. at 754.

Finally, the Ordinance helps protect medical privacy and lowers costs for businesses. In places without a similar ordinance, antiabortion demonstrators have followed patients up to the clinic's door and continued to watch them through the windows like animals at a zoo. SUMF ¶ 11. Some have even climbed ladders so they can peer at women inside the clinics. *Id.* Not only is this traumatic for patients, but it intrudes on their medical privacy. *See Hill*, 530 U.S. 703, 716–17. To curb that conduct, facilities have installed hedges, privacy fences, barriers, bulletproof glass, changes to doors, window guards, surveillance, and sophisticated locks. SUMF ¶ 12. Some facilities have even moved to buildings with higher rent simply because their current buildings are not conducive to this behavior. *Id.* These are significant interests. The Ordinance guards them.

### *2. The regulation is narrowly tailored.*

The Ordinance is also narrowly tailored to serve the interests above. Under intermediate scrutiny, a law is narrowly tailored if it does "not burden substantially more speech than necessary to achieve [its] goal." *iMatter Utah v. Njord*, 980 F. Supp. 2d 1356, 1371 (D. Utah 2013). The Ordinance does just that. Rather than enacting a complete barrier around abortion clinics, *see McCullen*, 573 U.S. at 469, the Ordinance allows people to stand on a public way or sidewalk and communicate with passerby so long as they stay eight feet apart. SUMF ¶ 1. The hurdle to come closer is not steep: it's simply consent. *Id.* The Ordinance does not burden substantially more speech than necessary. In fact, other than unwelcomed whispers, it is difficult to see how the Ordinance burdens speech at all.

Nor is the eight-foot radius arbitrary. People have an expected range of distance when passing people on sidewalks, and this concern is paramount for patients entering medical facilities who expect an even greater distance given the private nature of health care. SUMF ¶ 15. In the abortion context, a demonstrator who gets within that distance—especially if hostile or attempting to trick or manipulate patients—naturally makes patients feel intimidated, fearful, and stigmatized for receiving abortion care. SUMF ¶¶ 14, 15, 17.

And as discussed above, *supra* Section III.B.1, the eight-foot barrier prevents protestors from clogging streets, sidewalks, and doorways, and ensures close encounters are consensual. *See* SUMF ¶¶ 1, 10; *McCullen*, 573 U.S. at 486–87;

12

*Madsen*, 512 U.S. at 754 (1994). The distance also allows people to talk at a normal volume and communicate through signs. SUMF ¶¶ 1, 25. Thus, because the Ordinance accounts for personal space, safe roads, and sidewalks without burdening substantially more speech than necessary, it is narrowly tailored.

### 3. *The regulation leaves open ample alternative channels of communication.*

The Ordinance affords people like Plaintiff ample alternative channels of communication. First, members of the public can still approach others and distribute materials within eight feet and without consent. *See* SUMF ¶ 1. The Ordinance merely requires that they do so 100 feet away from a health-care facility's entrance. *See id.* In Denver, for example, they can demonstrate along the 16th Street Mall, Union Station, the Capitol Building, or even outside Whole Foods—all of which see significant foot traffic. Second, as previously discussed, the Ordinance permits speaking and counseling within the 100-foot barrier—the speaker simply cannot *approach* others within eight feet without their consent. *See id.* The Ordinance only limits speech in an extremely narrow set of circumstances. Everything else is fair game. Consequently, the myriad alternative channels satisfy the third element, and the Ordinance is valid on its face.

### C. The Ordinance is valid as applied to Plaintiff.

For Plaintiff's as-applied challenge, the Court must examine the Ordinance against a plaintiff's conduct and the factual context in which the law was applied. *Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294, 1309 (D. N.M. 2016) (first

citing *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009); and then citing *Galbreath v. City of Okla. City*, 568 F. App'x 534, 539 (10th Cir. 2014)). In First Amendment as-applied challenges, plaintiffs must show that the law was unconstitutional as applied to the particular circumstances of her case. *Martinez*, 197 F. Supp. 3d 1294, 1309 (D. N.M. 2016) (citing *United States. v. Sup. Ct. of N.M.*, 824 F.3d 1263, 1280 (10th Cir. 2016), *overturned on other grounds*, 839 F.3d 888 (10th Cir. 2016)).

Here, the facts show the Ordinance is constitutional as applied to Plaintiff. For one, the Ordinance has not prevented—or slowed—Plaintiff from delivering her message. She readily admits, despite the Ordinance, her counseling in Denver has been a success. SUMF ¶ 23. She also admits she does not have to yell to get people's attention because they usually approach her. SUMF ¶ 25. Video footage from the clinic further evidences her unencumbered ability to demonstrate. *Id.* Indeed, most people she encounters approach her and collect her counseling materials. *Id.* And in the rare instances they decline, Plaintiff admits they have heard her. SUMF ¶ 24.

In fact—concerning the only record evidence in this case—Plaintiff conceded that even without the Ordinance, her counseling would largely look the same because of already-existing laws and social norms. SUMF ¶ 29 ("Q: What would you have done differently in interacting with those two women coming up the ramp? A: Well, they are on private property. So, there isn't anything I could do differently.");

14

("Q: Is it fair to say you wouldn't have done anything differently? A: Well, I could say yes, because she was obviously in a hurry.")

In sum, because the Ordinance has not interfered with Plaintiff's counseling or limited her First Amendment rights, it is constitutional as applied to her.

### IV. The Ordinance Is Viewpoint Neutral.

The Ordinance does not discriminate against speech based on viewpoint. Unlike evaluating content, which focuses on subject matter, a viewpoint analysis looks at "particular views taken by speakers on a subject . . . ." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). To use an example from the abortion world, a content restriction would target all content that features abortion. *See id.* A viewpoint-neutral restriction, by contrast, would target either pro- or anti-abortion views, but not both. *See id.* No matter the forum, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* at 829. It is the plaintiff's burden to show the defendant acted with a viewpoint discriminatory purpose, which may be evidenced through legislative history. *Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d 1132, 1256 (D. N.M. 2022).

Here, the Ordinance is content neutral for the reasons discussed above. *See supra* Section III.A. It prohibits all people from approaching others to distribute leaflets, handbills, display signs, protest, educate, or counsel. SUMF ¶ 1. It takes no position on content and certainly not on a particular viewpoint. It favors no message

15

over another. Consequently, it is not a viewpoint restriction. Denver Defendants are entitled to judgment on the claim.

## V. Even If this Were a Content-Based Restriction, the Ordinance Satisfies Strict Scrutiny.

Should the Court decide the Ordinance is content based, it nonetheless survives strict scrutiny for the reasons expressed above. Access to health care, freedom to seek pregnancy-related services, public safety and order, protecting property rights, and privacy rights are compelling interests, and the Ordinance is narrowly tailored to meet them.

What's more, in the event the Court conducts a strict-scrutiny analysis, co-Defendants Jared Polis and Philip J. Weiser briefed the issue extensively in their Motion for Summary Judgment. (Doc. 100 at 9–25). Should the Court grant co-Defendants' Motion, same reasoning compels dismissal of Denver Defendants.

Dated February 27, 2025.

    Respectfully submitted by,
    *s/Andres Alers*
    Andres Alers, Assistant City Attorney
    Veronica Phifer, Assistant City Attorney
    Denver City Attorney's Office
    Litigation Section
    201 W. Colfax Avenue, Dep't 1108
    Denver, Colorado 80202-5332
    Telephone: 720-913-3100
    Facsimile: 720-913-3190
    andres.alers@denvergov.org
    veronica.phifer@denvergov.org
    *Attorneys for Defendants City and County of Denver, Kerry C. Tipper, and Ron Thomas*

## CERTIFICATE OF SERVICE

   I hereby certify that on this February 27, 2025, the foregoing **DENVER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court via the CM/ECF system which will send a notification of such filing to the following:

| | |
|---|---|
| Charles J. Cooper<br>David H. Thompson<br>John D. Ohlendorf<br>Brian W. Barnes<br>Cooper & Kirk, PLLC<br>Athanasia O. Livas<br>ccooper@cooperkirk.com<br>dthompson@cooperkirk.com<br>johlendorf@cooperkirk.com<br>bbarnes@cooperkirk.com<br>alivas@cooperkirk.com<br><br>Roger Byron<br>David J. Hacker<br>Jeffrey C. Mateer<br>First Liberty Institute<br>rbyron@firstliberty.org<br>dhacker@firstliberty.org<br>lepatterson@firstliberty.org<br>jmateer@firstliberty.org<br><br>*Attorneys for Plaintiff* | Andrew D. Ringel<br>Edmund M. Kennedy<br>Hall & Evans, LLC<br>1001 17th St, Ste 300<br>Denver, CO 80202<br>ringela@hallevans.com<br>kennedy@hallevans.com<br>*Attorney for Defendants McCann*<br><br>Peter G. Baumann<br>Emily B. Buckley<br>LeeAnn Morrill<br>Colorado Attorney General's Office<br>Ralph L. Carr Colorado Judicial Center<br>peter.baumann@coag.gov<br>emily.buckley@coag.gov<br>leeann.morrill@coag.gov<br>*Attorneys for Defendants Polis and Weiser* |

                *s/Michele Imes*
                Denver City Attorney's Office