**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01376-SKC-NRN

WENDY FAUSTIN

      Plaintiff,

v.

JARED S. POLIS, in his official capacity as Governor of Colorado;
PHILIP J. WEISER, in his official capacity as Colorado Attorney General;
CITY AND COUNTY OF DENVER;
JOHN WALSH, in his official capacity as District Attorney for the 2nd Judicial
District;
KERRY C. TIPPER, in her official capacity as City Attorney of Denver; *and*
RON THOMAS, in his official capacity as Chief of the Denver Police Department,

      Defendants.

---

**DENVER DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Defendants City and County of Denver, Kerry C. Tipper, and Ron Thomas

(collectively, "Denver Defendants") oppose Plaintiff Wendy Faustin's Motion for

Summary Judgment (Doc. 101) because *Hill v. Colorado*, 530 U.S. 703 (2000) controls.

Further, Denver Ordinance § 38-114(b) ("the Ordinance") is—on its face and as

applied to Plaintiff—content neutral, viewpoint neutral, and narrowly tailored to

serve significant government interests. Finally, Plaintiff submits no evidence that

Defendants Tipper or Thomas have enforced the Ordinance for anti-abortion speech.

The Motion should be denied.

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Undersigned did not use artificial intelligence to draft any part of this filing.

## INTRODUCTION

As Plaintiff concedes, the holding in *Hill* controls. Doc. 101 at 2 ("Plaintiff does not dispute that *Hill* controls."). That is especially true because the Supreme Court recently refused to grant certiorari in two nearly identical cases in which the petitioners sought to overturn *Hill*. *Coalition Life v. City of Carbondale*, 604 U.S.—— (2025); *Turco v. City of Englewood*, No. 23-1189, — S. Ct. —, 2025 WL 581834 (Mem). Even if the Court does not follow binding precedent, the Motion still falls short because the any of the Ordinance's unconstitutional applications do not substantially outweigh the constitutional ones, the Ordinance is content neutral, viewpoint neutral, and narrowly tailored to serve significant government interests.

Under the Ordinance, Plaintiff can deliver leaflets, talk to individuals in a compassionate tone, and stand on sidewalks outside health care facilities, which essentially forces people to pass right by her and hear her message. *See* SAUMF ¶¶ 3, 4. Plaintiff concedes her antiabortion demonstrations would largely look the same if the Ordinance didn't exist, SAUMF ¶ 5. And she happily acknowledges her counseling in Denver has been a resounding success even with the Ordinance in effect. SAUMF ¶ 3. Plaintiff's Motion lacks merit on all fronts and should be denied.

**LEGAL STANDARD**

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A party moving for summary judgment who also bears the burden of proof at trial, as Plaintiff does here, must satisfy "a more stringent standard." *Pelt v. Utah*, 539, F.3d 1271, 1280 (10th Cir. 2008). In that scenario, "to obtain summary judgment, [the moving party] cannot force the nonmoving party to come forward with 'specific facts showing there [is] a genuine issue for trial' merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact." *Id.* (citing *Mudrick v. Cross Services, Inc.,* 200 F. App'x 338, 340 (5th Cir. 2006)). "Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

A plaintiff cannot rest solely on allegations in the pleadings but must set forth specific facts by reference to the record supporting each element of her claim. *Celotex*, 477 U.S. at 324. Evidence that is "merely colorable," or consists only of "unsubstantiated allegations" is insufficient. *Doe v. Chee*, No. CIV 19-1148 RB/CG, 2021 WL 214668, at *4 (D. N.M. Jan. 21, 2021). At summary judgement the Court must construe all evidence in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## ARGUMENT

*Hill* bars Plaintiff's claims. The Court, therefore, need not engage in further analysis. Nonetheless, Denver Defendants expand their argument to explain why the Ordinance is a content-neutral time, place, and manner restriction, valid on its face and as applied to Plaintiff, and viewpoint neutral. All are discussed in turn.

## I.    As Plaintiff Concedes, *Hill* Is Binding and Forecloses Her Claims.

"Plaintiff does not dispute that *Hill* controls." Doc. 101 at 2. Even so, she points to Justice Thomas's dissent in the Supreme Court's decision to deny certiorari in *Coalition Life v. City of Carbondale*, 604 U.S.—— (2025) (Thomas, J., dissenting), which raised the identical issue Plaintiff raises here. In dissent, Justice Thomas expressed his disappointment that his colleagues refused to take the case and overturn *Hill*. He also argued that *Hill* has been eroded.

Even though the Supreme Court has never overturned *Hill*—and just voted against doing so—Justice Thomas claims various dissents and certiorari denials have destroyed it. *See id.* at 1–4 (first citing *Hill*, 530 U. S. at 765, 767 (Kennedy, J., dissenting); then citing *Hill*, 530 U.S. at 742, 749, 750 (Scalia, J., joined by Thomas, J., dissenting); and then citing *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 86–87, 92, 103–104 (2022) (Thomas, J., joined by Gorsuch and Barrett, JJ., dissenting)); *id.* at 5, 8 (citing *Bruni v. Pittsburgh*, 592 U. S. ___, 141 S. Ct. 578 (2021) (Thomas, J., statement denying certiorari)).

4

Dissents and cert denials do not set precedent. Plaintiff herself concedes "the result she seeks is contrary to currently governing precedent as set forth by the majority opinion in *Hill* . . . . She therefore institutes this litigation to vindicate her First Amendment rights and to seek to have *Hill* overruled." Doc. 69 ¶ 6.

Justice Thomas points to two majority holdings, but they did not overturn *Hill*. He first cites *McCullen v. Coakley*, in which the Court said a law "would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." 573 U. S. 464, 479 (2014). That is not a holding overturning *Hill. Cf. Hill*, 530 U.S. at 723 (finding Colorado's analogous statute content neutral because "[i]nstead of drawing distinctions based on the subject that the approaching speaker may wish to address, the statute applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries"); *see also City of Austin*, 596 U.S. at 72 ("This Court's First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral.").

Nor does *McCullen* make the Ordinance unconstitutional. For instance, the Ordinance prohibits passing leaflets, handbills, and displaying signs. SUMF ¶ 25. Because all leaflets, handbills, and signs are prohibited, police need not examine the content of the message on those leaflets and signs. *Id.* Although the Ordinance bans protests, education, and counseling, it prohibits all forms of those activities regardless

of the messages expressed within them. That makes it lawful. *TikTok Inc. v. Garland*, 604 U.S.——, 145 S. Ct. 57, 67 (2025) ("[A] law is content based on its face if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015))).

Relatedly, the second case Justice Thomas identified is *Reed v. Town of Gilbert*, but the comparison is unpersuasive. Justice Thomas writes that *Reed*, like *McCullen*, "establish[es] that strict scrutiny is the proper standard of review when a law targets a 'specific subject matter . . . .'" *See Coalition Life*, 604 U.S.—— (2025) (Thomas, J., dissenting) (quoting *Bruni* 592 U. S. ___, (Thomas, J., statement denying certiorari)). But as just discussed, because the Ordinance targets *all* counseling, educating, and protesting—regardless of the speech's message—it's in harmony with *Reed* and *McCullen*.

## II. Plaintiff's Facial Challenge Fails Because She Submits No Evidence Showing That a Substantial Number of the Ordinance's Applications Are Unconstitutional.

As Denver Defendants explained in their Motion for Summary Judgment (Doc. 102 at 8), to prevail on a facial challenge, Plaintiff must demonstrate "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [the law's] plainly legitimate sweep."[1] *Moody v. NetChoice*, 603 U.S. 707, 723 (2024) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)).

---

[1] For context, this standard initially applied to overbroad facial challenges under the First Amendment. *Moody v. NetChoice*, 603 U.S. at 778 n.14 (2024) (Alito, J., concurring); *United States v. Stevens*, 559 U.S. 460, 473 (2010). But in *Moody*, the

Here, Plaintiff provides no evidence or argument about the Ordinance's applications. In fact, she neglects the issue entirely and focuses solely on a content analysis, which is improper. *Moody*, 603 U.S. at 723. Thus, without evidence that a substantial number of the Ordinance's applications are unconstitutional, Plaintiff is not entitled to judgment on her facial challenge. *Moody*, 603 U.S. at 723.

## III.    The Ordinance Is Content Neutral.

The Ordinance is content neutral because it doesn't target specific messages or ideas and can be justified without reference to abortion speech. "First, a law is content based on its face if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *TikTok Inc. v. Garland*, 604 U.S.——, 145 S. Ct. 57, 67 (2025) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

"Second, a facially content-neutral law is nonetheless treated as a content-based regulation of speech if it 'cannot be justified without reference to the content of the regulated speech or was 'adopted by the government 'because of disagreement with the message the speech conveys.'" *Id.* (quoting *Reed*, 576 U.S. at 164). If the law falls under either of those two categories, it is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to

---

Court said it applied to all First Amendment facial challenges without limitation. *See Moody*, 603 U.S. at 723 ("In First Amendment cases . . . . [t]he question is whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." (quoting *Bonta*, 594 U.S. at 615)).

serve compelling state interests." *Reed*, 576 U.S. at 163. That standard is strict scrutiny. *See id.*

If, on the other hand, the law doesn't target speech based on its message, it is content neutral and subject to intermediate scrutiny. *See TikTok*, 45 S. Ct. at 67. Under that standard, courts will uphold the law provided "it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Turner Broad. Sys, Inc. v. FCC*, 520 U.S. 180, 189 (1997) (*Turner II* ).

Here, Plaintiff contends the Ordinance is content based because it regulates speech based on "the topic discussed or the idea or message expressed . . . ." Doc. 101 at 15 (quoting *Reed*, 576 U.S. at 163). She also says the Ordinance is content based because it "'cannot be justified without reference to the content'—and, indeed, the viewpoint—'of the regulated speech.'" *Id.* (quoting *Reed*, 576 U.S. at 164). She is mistaken on both fronts.

### A. The Ordinance doesn't restrict speech based on a topic, idea, or message.

Plaintiff says the Ordinance only regulates abortion speech because it applies to speech at entrances to health care facilities, which is where abortion speech is most likely to occur and will be best received. Doc. 101 at 15–16. The argument falls flat.

For one, the Ordinance does not single out abortion speech. It simply prevents people from approaching others to distribute leaflets, handbills, display signs, protest, educate, or counsel on *any* topic, idea, or message. SUMF ¶ 25. Thus, as

8

Plaintiff concedes—for Colorado's analogous statute—it applies to antiabortion speech as equally as it applies to other topics. Doc. 101 at 11 ("True, the law would theoretically bar an animal-rights activist from approaching a woman entering a clinic to give her literature protesting the meat-packing industry . . . .").

To the extent signs and education themselves constitute topics that violate the First Amendment, the Supreme Court has expressly rejected that interpretation. In *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, the Court reversed a court of appeals' decision for finding a law content based because it required people to read signs to know if they fell under a restricted topic. 596 U.S. 61, 69, 77 (2022). It rebuked the court of appeals' finding as "too extreme an interpretation of this Court's precedent." *Id.* at 69. Instead, it explained "[t]his Court's First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *Id.* at 72.

The Ordinance does not single out abortion clinics; it applies to all health care facilities, SUMF ¶ 25, which it defines as "[a]ny licensed or certified medical or health care facility within [Denver] or any office or clinic within [Denver] regularly used by any licensed health care provider to provide medical, nursing, or health care to patients." SAUMF ¶ 1. That includes hospitals, offices for primary providers, centers for ear, nose, and throat, and any other facility that provides licensed health care.

9

Plaintiff's argument also lacks evidentiary support. She provides no evidence to suggest a health care facility is the most effective location for antiabortion protests or that approaching others—rather than allowing them to approach a protestor—is the most, or even more, effective method of protest. Thus, her argument amounts to unsubstantiated allegations, which means she has failed to meet her burden. *Doe v. Chee*, No. CIV 19-1148 RB/CG, 2021 WL 214668, at *4 (D. N.M. Jan. 21, 2021) (noting evidence that is "merely colorable," or consists only of unsubstantiated allegations" is insufficient to prevail at summary judgment).

It is true, of course, that because abortion clinics are health care facilities, the Ordinance may affect abortion-related speech more than speech on other subjects. But "a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics." *McCullen v. Coakley*, 573 U.S. 464, 480 (2014). Plaintiff's argument is meritless from all sides.

## B. The Ordinance can be justified without reference to abortion or antiabortion speech.

Though Plaintiff asserts the Ordinance cannot be justified without reference to abortion speech, the only evidence she puts forth to support it are two lines from Denver's amicus brief in *Hill* in which Denver said the Ordinance was "similar . . . in

10

purpose" to Colorado's statute and meant, in part, to prevent the "substantial negative impact on patients that encounter" sidewalk counselors.[2] SUMF ¶ 28.

Plaintiff has not met her burden. Colorado's statute was passed to protect access to health care, which the Supreme Court has deemed a content-neutral justification. *McCullen*, 573 U.S. at 480 ("We have previously deemed the foregoing concerns[, including patient access to health care,] to be content neutral.").

Access to health care aside, as argued more fully in Denver Defendants' Motion for Summary Judgment, Doc. 102 at 9–11, there are myriad justifications that support the Ordinance. Though some may overlap with abortion speech—like protecting a person's freedom to seek pregnancy-related services—many are unrelated, such as protecting the free flow of traffic on sidewalks and streets, ensuring public safety and order, protecting property rights, and protecting residential privacy rights—all of which the Supreme Court has found content neutral. *McCullen*, 573 U.S. at 486–87; *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 754 (1994). The Ordinance can be justified without reference to abortion-related speech.

*       *       *

---

[2] Plaintiff's representation is inaccurate. In the brief, Denver simply stated there was evidence that picketing demonstrations had a negative impact on patients. Amici Br. of the City of Boulder and the City and County of Denver in Support of Respondents, 1999 WL 1186251, at *20.

In sum, because the Ordinance does not restrict speech based on the message and can be justified without reference to abortion-related speech, it is content neutral and, therefore, subject to intermediate scrutiny.

## IV.    The Ordinance Is a Valid Time, Place, and Manner Restriction.

Because the Ordinance applies to entrances to health care facilities, it necessarily implicates sidewalks. Sidewalks are considered traditional public forums, but they do not grant limitless freedoms to protestors. Content-neutral restrictions in traditional public forums are permissible so long as they "(a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016) (citing *Doe v. City of Albuquerque*, 667 F.3d 1111, 1130–31 (10th Cir. 2012)). The Ordinance satisfies all three requirements.

### A. The Ordinance serves significant government interests.

Plaintiff contends the Ordinance serves no legitimate interest. Doc. 101 at 17. According to her, the government's only interest is to protect women who enter abortion clinics from hearing antiabortion speech. (*Id.*). She is mistaken.

As discussed above, *supra* Section III.B, the Ordinance serves many diverse, significant government interests like access to health care, the freedom to seek pregnancy-related services, free flow of traffic on sidewalks and streets, public safety and order, protecting property rights, and protecting residential privacy rights. *McCullen v. Coakley*, 573 U.S. 464, 486–87 (2014); *Madsen v. Women's Health Center,*

*Inc.*, 512 U.S. 753, 754 (1994); *see also* Doc. 102 at 9–11 (expanding on each of those interests).

The interests in the abortion realm are also important. Without the Ordinance, people would suffer negative consequences like limited clinician availability, which would force patients to travel farther for medical services and suffer adverse health impacts including unwanted pregnancy and childbirth. SAUMF ¶ 6.

The Ordinance also prevents traumatic encounters between antiabortion demonstrators and patients. Some demonstrators have worn lab coats in an attempt to coax patients away from their intended health care facilities, which directly undercuts the government's interest in protecting patients' access to health care and a person's freedom to seek pregnancy-related services. *Id.* Others have tricked patients into entering "crisis" pregnancy centers, which are fake health care facilities designed to sway people out of getting the health care they seek—abortions included—further undermining those same significant government interests. SAUMF ¶¶ 7, 15. The Ordinance is important.

**B. The Ordinance is narrowly tailored to advance these significant government interests.**

According to Plaintiff, to the extent the Ordinance is meant to safeguard patient access to health care or public safety, it is not narrowly tailored to serve those interests. Doc. 101 at 17–18. In her view, the Ordinance's breadth is "astonishing" because "[i]t covers *any* approach without prior consent *by anyone* and *to anyone* . . . ." *Id.* at 18. She also argues there are already laws in place that "[protect] any interest

in preventing violence and obstruction outside abortion clinics," which makes the Ordinance redundant. *Id.* at 18. Plaintiff's reasoning doesn't pass muster.

To begin, Plaintiff's framing is disingenuous. Under intermediate scrutiny, the Ordinance is narrowly tailored if it does "not burden substantially more speech than necessary to achieve [its] goal." *iMatter Utah v. Njord*, 980 F. Supp. 2d 1356, 1371 (D. Utah 2013). The Ordinance does just that. Yes, it prevents people from approaching others (within eight feet) without consent, but that is the extent of the restriction. SUMF ¶ 25. With consent, anyone can freely approach another; and even without, the Ordinance allows passerby to get within inches of a protestor, educator, or counselor. As discussed below, *infra* Section V, pedestrians are forced to pass Plaintiff and receive her message, SAUMF ¶¶ 3, 4, which the Ordinance permits. SUMF ¶ 25. Again, the Ordinance only prevents people protesting, educating, and counseling from approaching others without consent. *Id.* In no way does that substantially burden more speech than necessary.

The Ordinance also stops protestors from clogging streets, sidewalks, and doorways, and ensures close encounters are consensual. *See* SUMF ¶ 25; SAUMF ¶ 10; *McCullen*, 573 U.S. at 486–87; *Madsen*, 512 U.S. at 754. Plaintiff's argument that already-existing laws accomplish those goals is wrong. For instance, she points to Colorado Revised Statute section 18-9-122(2), which criminalizes anyone who "knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit from a health-care facility." Doc. 101 at 18. She also cites the Freedom of

14

Access to Clinic Entrances Act of 1994 ("the FACE Act"), which makes it a crime for anyone who —"by force or threat of force or by physical obstruction[—] intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." *Id.* at 18–19 (citing 18 U.S.C. § 248(a)(1)).

Neither law adequately replace the Ordinance. For example, protestors walking with patients up to a clinic's door would not qualify as "knowingly obstructing, detaining, hindering, impeding, or blocking entry to a health care facility under section 18-9-122. Nor would such conduct amount to using or threatening force under the FACE Act. Even the FACE Act's physical obstruction proviso is no substitute for the Ordinance because it only applies if someone interferes with a person's attempt to receive reproductive health services, 18 U.S.C. § 248(a)(1), whereas the Ordinance applies to all health care facilities and isn't limited to reproductive health, SUMF ¶ 25.

In short, because the Ordinance accounts for personal space, safe roads, and sidewalks without burdening substantially more speech than necessary, it is narrowly tailored.

## C. The Ordinance offers ample alternative channels of communication.

The Ordinance affords people like Plaintiff ample alternative channels of communication. First, members of the public can still approach others and distribute

15

materials within eight feet and without consent. *See* SUMF ¶ 25. The Ordinance

merely requires they do so 100 feet away from a health-care facility's entrance. *See*

*id.* In Denver, for example, they can demonstrate along the 16th Street Mall, Union

Station, the Capitol Building, or even outside Trader Joe's—all of which see

significant foot traffic. Second, as previously discussed, the Ordinance permits

speaking and counseling within the 100-foot barrier; the speaker simply cannot

*approach* others within eight feet without consent. *See id.* The Ordinance limits

speech in an extremely narrow set of circumstances. Everything else is acceptable.

Consequently, the ample alternative channels satisfy the third element, and the

Ordinance is valid on its face.

**V.    The Ordinance Is Constitutional as Applied to Plaintiff.**

For Plaintiff's as-applied challenge, the Court must examine the Ordinance

against Plaintiff's conduct and the factual context in which the law was applied.

*Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294, 1309 (D. N.M. 2016) (first citing

*United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009); and then citing

*Galbreath v. City of Okla. City*, 568 F. App'x 534, 539 (10th Cir. 2014)). In First

Amendment as-applied challenges, plaintiffs must show that the law was

unconstitutional as applied to the particular circumstances of her case. *Martinez*, 197

F. Supp. 3d at 1309 (citing *United States. v. Sup. Ct.*, 824 F.3d 1263, 1280 (10th Cir.

2016), *overturned on other grounds*, 839 F.3d 888 (10th Cir. 2016)).

Here, the facts show that the Ordinance is constitutional as applied to Plaintiff. After all, it has not prevented—or slowed—Plaintiff from delivering her message. She readily admits her counseling in Denver has been a success under the Ordinance. SAUMF ¶ 3. She also concedes she does not have to shout to get people's attention because they usually approach her. SAUMF ¶ 4. Video footage from the clinic confirms her unencumbered ability to demonstrate. *Id.* Indeed, most people she encounters approach her and collect her counseling materials. *Id.* And in the rare instances they decline,[3] Plaintiff acknowledges they have heard her. SAUMF ¶ 8.

In fact, Plaintiff concedes that even without the Ordinance, her counseling would largely look the same because of already-existing laws and social norms. SAUMF ¶ 7 ("Q: What would you have done differently in interacting with those two women coming up the ramp? A: Well, they are on private property. So, there isn't anything I could do differently."); ("Q: Is it fair to say you wouldn't have done anything differently? A: Well, I could say yes, because she was obviously in a hurry.")

In sum, because the Ordinance has not interfered with Plaintiff's counseling or limited her First Amendment rights, it is constitutional as applied to her.

## VI.    The Ordinance is Viewpoint Neutral.

---

[3] Plaintiff estimates she gets rebuked just once a week. SUMF ¶¶ 46, 48. Denver Defendants also provide a general reminder that the Court construes evidence and inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986),

The Ordinance does not discriminate against speech based on viewpoint. A government regulation discriminates based on viewpoint if "the government targets not subject matter, but particular views taken by speakers on a subject." *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013); *id.* at 1230 (finding a law viewpoint based when "decisionmakers undertak[e] a course of action *because of*, not merely in spite of, the action's adverse effects upon an identifiable group" (quoting *Pers. Adm'r of Mass v. Feeney*, 442 U.S. 256, 279 (1979))) (emphasis added). In these circumstances, a viewpoint-based restriction would target either antiabortion or pro-choice speech. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Here, the Ordinance is content neutral for the reasons discussed above. *See supra* Section III. It prohibits *all* people from approaching others to distribute leaflets, handbills, display signs, protest, educate, or counsel. SUMF ¶ 25. It takes no position on content and certainly not on a particular viewpoint. It favors no message over another. Further, even if the Ordinance has a greater effect on antiabortion speech, that does not amount to targeting a particular view. *McCullen v. Coakley*, 573 U.S. 464, 480 (2014) (noting a "law does not become content based simply because it may disproportionately affect speech on certain topics").

In sum, because there is no evidence the Ordinance specifically targets antiabortion speech—or any particular view—it is viewpoint neutral.

18

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion.

Dated April 18th, 2025.

Respectfully submitted by,

*s/ Andres Alers*
Andres Alers, Assistant City Attorney
Veronica Phifer, Assistant City Attorney
Denver City Attorney's Office
201 W. Colfax Avenue, Dep't 1108
Denver, Colorado 80202-5332
Telephone: 720-913-3100
Fax: 720-913-3190
Email: andres.alers@denvergov.org
Email: veronica.phifer@denvergov.org
*Attorneys for Defendant City and County of*
*Denver, Kerry C. Tipper, and Ron Thomas*

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 18th, 2025, the foregoing **DENVER DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court via the CM/ECF system which will send a notification of such filing to the following:

| | |
|---|---|
| Charles J. Cooper<br>David H. Thompson<br>John D. Ohlendorf<br>Brian W. Barnes<br>Cooper & Kirk, PLLC<br>Athanasia O. Livas<br>ccooper@cooperkirk.com<br>dthompson@cooperkirk.com<br>johlendorf@cooperkirk.com<br>bbarnes@cooperkirk.com<br>alivas@cooperkirk.com<br><br>Roger Byron<br>David J. Hacker<br>Jeffrey C. Mateer<br>First Liberty Institute<br>rbyron@firstliberty.org<br>dhacker@firstliberty.org<br>lepatterson@firstliberty.org<br>jmateer@firstliberty.org<br><br>*Attorneys for Plaintiff* | Andrew D. Ringel<br>Edmund M. Kennedy<br>Hall & Evans, LLC<br>1001 17th St, Ste 300<br>Denver, CO 80202<br>ringela@hallevans.com<br>kennedy@hallevans.com<br>*Attorney for Defendants McCann*<br><br>Peter G. Baumann<br>Emily B. Buckley<br>LeeAnn Morrill<br>Colorado Attorney General's Office<br>Ralph L. Carr Colorado Judicial Center<br>peter.baumann@coag.gov<br>emily.buckley@coag.gov<br>leeann.morrill@coag.gov<br>*Attorneys for Defendants Polis and Weiser* |

s/ *Nicole Petosa*
Denver City Attorney's Office

20